274 So.2d 769 (1973)
Wayne JOHNSON, Plaintiff-Appellee-Appellant,
v.
AETNA CASUALTY AND SURETY CO., Defendant-Appellee,
State Farm Mutual Automobile Insurance Company et al., Defendants-Appellants.
No. 4123.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1973.
Rehearing Denied April 2, 1973.
*770 Gist, Methvin & Trimble by DeWitt T. Methvin, Jr., Alexandria, for State Farm.
David A. Sheffield, Alexandria, for Johnson.
James A. Bolen, Jr., Alexandria, for Hartford.
Polk, Foote, Randolph & Percy by J. Michael Percy, Alexandria, for Lillian H. Jackson.
Gold, Hall, Hammill & Little by Leo Gold and Jimmy M. Stoker, Alexandria, for Aetna and Philip Morris, Jr.
Lillian M. Cohen, and Louis P. Trent, New Orleans, for defendant-appellee.
Before FRUGE, MILLER and DOMENGEAUX, JJ.
MILLER, Judge.
Defendant Mrs. Lillian H. Jackson, drove her friend's Mercury automobile into an intersection through a red light and was struck by a Sheriff's patrol car moving with a green light. Plaintiff Wayne Johnson, a guest passenger in the patrol car, was awarded $13,337.35 in damages against Mrs. Jackson and her insurer State Farm Mutual Automobile Insurance Company. Defendant Aetna Casualty and Surety Company, liability insurer on the Mercury automobile driven by Mrs. Jackson, was not liable because the owner had issued written instructions prohibiting one in Mrs. Jackson's class from driving the Mercury.
In her appeal, Mrs. Jackson contends that she had a green light and the patrol car ran the red light; that Aetna's omnibus clause affords coverage to her; and that the award should be reduced. State Farm appealed and here makes the same contentions. Alternatively State Farm contends that its non-owned automobile clause excluded coverage under its liability policy insuring Mrs. Jackson. Plaintiff Johnson answered the appeal and seeks an increase in the award and asks that defendant Aetna also be cast in judgment. The trial court judgment is affirmed.
The accident occurred on October 16, 1969 at 3:40 a. m. at the intersection of MacArthur Drive and Jackson Street. MacArthur Drive is a four lane (with median) loop highway taking by-passing traffic from three major highways around Alexandria. At the intersection, two lanes of MacArthur Drive take traffic northwesterly and the other two lanes take traffic southeasterly. Jackson Street has only two lanes and takes traffic northeasterly and southwesterly. The intersection has two electric semaphore signals for northwest bound traffic and two signals for southeast bound traffic on MacArthur. Northeast and southwest bound traffic on Jackson is confronted with four electric semaphore signals.
*771 Mrs. Jackson proceeded northwesterly on MacArthur and turned left to proceed southwesterly on Jackson. When the front of the Mercury occupied the left or passing lane of the southeast bound traffic lane of MacArthur, the front end of the southeast bound patrol car struck the right front side of the Mercury. The patrol car was proceeding at or about the 50 miles per hour speed limit for MacArthur Drive traffic. The drivers did not see the other vehicle before impact.
Mrs. Jackson thought that she had a blinking yellow light allowing her to proceed with caution, but it was established that the signal sequence did not provide for blinking lights at the time of the accident. Deputy Louis A. Robinson was driving the patrol car and testified that he had a green light at the intersection. This was corroborated by a disinterested witness, Harvey Lee Gongre, who was following the patrol car at a distance of some 100 to 200 feet. Gongre testified that there was no warning that the Mercury would run the red light and that the patrol car had no opportunity to avoid the collision.
The trial court's finding that Mrs. Jackson's negligence was the sole legal cause of the accident is manifestly correct.
The Mercury automobile was owned by the P. L. Peterson Trust and leased to Philip Morris Incorporated. Mr. R. X. Chauvin, a 24 year employee of Philip Morris, was always assigned a company car for the purpose of making his sales contacts. It was standard practice for Mr. Chauvin to select and buy the car which he desired to use and he selected this unit a few months before the accident. Philip Morris' liability insurance with Aetna provided:
"II. PERSONS INSURED
Each of the following is an insured under this insurance to the extent set forth below:
(a) the named insured;

(b) any partner or executive officer thereof, but with respect to a non-owned automobile only while such automobile is being used in the business of the named insured;

(c) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission...."
Several years before this accident Philip Morris distributed a booklet to each employee titled "YOUR COMPANY CAR and Rules of the Road" which set forth its permission to use the leased vehicle in the following terms:

"PERSONAL USEAs you know you are permitted to use your company owned car for personal driving, including vacations, at a cost to you of only 3½¢ per mile. However, the privilege to drive for personal use is restricted to you and your wife. Expenses OTHER THAN storage, parking, washing and tolls which you incur in the course of your personal driving, may be reported on your expense voucher just as you report while driving on business. The liability insurance coverage carried by the company on automobiles includes use of the car for personal driving."
The trial court found as fact that Mrs. Jackson did not have permission of the named insured, Philip Morris, to operate the automobile, and that Chauvin knew that he did not have authority to let Mrs. Jackson drive the leased vehicle. Both Chauvin and his immediate superior Mr. Adolph N. Hampton so testified. This testimony together with the quoted written notice supports the trial court's conclusion that the automobile was furnished to Chauvin for business use and for personal use only by Chauvin and his wife.
The omnibus insured clause has been interpreted by the courts to extend *772 coverage to "second permittees" whose actions or status indicates that "use" or "operation" of the automobile, in the technical sense of those terms, is with the implied permission of the named insured. Various tests have been devised by the courts to infer permission of the named insured. Appellants and some appellees answering the appeal, argue that the jurisprudence which has found implied permission is here applicable. It would serve no purpose to discuss in detail the various treatments courts have accorded the omnibus insured clause under the differing factual situations (Rogillio v. Cazedessus, 241 La. 186, 198, 127 So.2d 734, 738 [1961]) because here, Philip Morris' established policy was to restrict use of the automobile to business use and personal use by Chauvin and his wife. For an exhaustive discussion of the omnibus clause and its interpretation and treatment by the courts, see Smith v. Insurance Company of Pennsylvania, 161 So.2d 903 (La.App. 1 Cir. 1964); Coco v. State Farm Mutual Automobile Insurance Company, 136 So.2d 288 (La. App. 3 Cir. 1961).
Appellants alternatively argue that business use would "include an employee engaging in social activities and recreational purposes, particularly when out of town on his employer's business." It is argued that the restriction of personal use to Chauvin and his wife is not here applicable because the automobile was being used as a part of Chauvin's business at the time of the accident.
Mrs. Jackson was not an employee or client of Philip Morris. She was a long time personal friend of Chauvin and he frequently took her out for dinner, drinks and dancing. On most of these occasions Mrs. Jackson drove Chauvin's car with his permission. Although Chauvin knew that he did not have Philip Morris' permission to allow her to drive, he never informed her of that restriction or prohibition.
On October 15, 1969 Mrs. Jackson met Chauvin at his motel at about 8 p. m. While on their way to dinner, Chauvin had some difficulty driving and asked Mrs. Jackson to drive. She drove to a restaurant where they had dinner and some four or five drinks each. At 1 a. m. she drove to a night club. They left at about 3:30 a. m. and she drove until the accident occurred shortly thereafter.
The trial court's determination that this use of the company car was for Chauvin's personal use is manifestly correct. Even if eating the evening meal was considered a business use of the company car, we note that the evening meal had been concluded the evening before the morning of the accident. The mission on which Chauvin and Mrs. Jackson were engaged was of no benefit to Philip Morris.
Aetna and Philip Morris have the right to limit contractual liability. Kendrick v. Mason, 234 La. 271, 99 So.2d 108 (1958). Where, as in the instant case, Philip Morris' only indication of company policy with respect to use or operation of insured automobiles is one of restriction, the foreseeability test for implied permission enunciated in Cazedessus, supra, and reiterated in Czarniecki, supra, dictates against a holding that Mrs. Jackson was operating the automobile with permission of the named insured. See the discussion of foreseeability as a test for implied permission in omnibus insured clauses. Note, 31 La.L.Rev. 555 (1971).
Against appellant Jackson's argument that Louisiana's public policy as stated in LSA-R.S. 22:655 is to liberally construe omnibus coverage, must be weighed the language of Czarniecki quoting from Cazedessus:
"`But counsel for said companies confidently declare that in other cases we have, either expressly or by denying writs to the Courts of Appeal, so extended the interpretation of "permission of the named insured" that it applies to anyone who has been given legal control of the car. With this we cannot agree. (Emphasis added.)'" American Home *773 Assurance Company v. Czarniecki, 255 La. 251, 230 So.2d 253, 257 (1969).
To find coverage by Aetna under the facts of the instant case would be to re-write the insurance contract between Aetna and Philip Morris in a way uncontemplated by the parties.
We affirm the trial court's finding of no coverage under Aetna's policy.
Appellant State Farm alternatively argues that the trial court erred in finding coverage under the non-owned automobile clause of Mrs. Jackson's policy with State Farm. The relevant portion of State Farm's policy provides coverage:
"(b) with respect to a non-owned automobile,
(1) the named insured,
(2) any relative, but only with respect to a private passenger automobile or trailer,
provided his actual operation or (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and ...."
It was held that although Mrs. Jackson had not obtained permission of the owner of the "non-owned" automobile, she "reasonably believed" she had permission of the owner to drive the Mercury. Chauvin and Mrs. Jackson testified that Mrs. Jackson was not told that she did not have the owner's permission to drive the company car and that she had driven Chauvin's company cars on many prior occasions.
State Farm cites the Czarniecki holding as supporting its contention that Mrs. Jackson did not reasonably believe that she had permission of the owner. But the facts in Czarniecki are not aligned to those in this case. In Czarniecki, the court was dealing with a third permittee rather than a second permittee, and the driver had no cause to think that he had permission of the owner. While Mrs. Jackson realized she was driving a company car, she had never been informed of restrictions placed upon Chauvin on his authority to allow her to drive the vehicle. She understood that she had permission of an executive of Philip Morris, to operate a vehicle over which he had the complete, exclusive and continuous possession and apparent use and control.
The non-owned automobile clause by its own language provides broader coverage than does the omnibus clause. Not only is an insured under the non-owned automobile clause protected when using an automobile with permission of the owner, but also when "reasonably believed to be with the permission" of the owner. Had the same coverage been intended under both clauses, the language would have been identical. But it is not, and in order to give effect to the additional language regarding reasonable belief, a broader standard of determining permission must be applied under the non-owned automobile clause. "Reasonable belief" indicates a subjective standard of determining permission, so that a permittee could be covered if he reasonably believed that he had permission of the owner, transmitted through another permittee, whether or not such other permittee had actual authority to transmit permission. See note, 45 TLR 175 at 178.
There is no manifest error in the trial court's conclusion that Mrs. Jackson reasonably believed that she had the owner's permission to drive the Mercury.

QUANTUM
Mr. Johnson was awarded $12,000 for general damages, plus $1,307.35 in past medical expenses and $30 for future medical expenses. Mrs. Jackson and State Farm contend that the award for general damages should be reduced to $5,000. Johnson seeks an increase in the award for general damages to $15,000 and an increase in the award for future medical treatment to $335.00.
*774 Johnson was taken by ambulance to St. Francis Cabrini Hospital. His treating physician found him unconscious with multiple abrasions and contusions about the face, chest and left leg. The laceration over his left eye and across his left eyelid and down the left side of his face required both deep and surface sutures. He was hospitalized on three occasions, the first time for five days, the second for two days and third for two days. Although he was unable to work for several months, he did not lose his pay.
Johnson's most serious injuries were a fracture of the lower jaw and a fracture of the upper jaw on the left side. These fractures were reduced by open reduction and the bones were put back together and arch bars were installed on November 6, 1969. This procedure required at least twenty penetrations through the gums between the teeth to secure the fractured bones for healing. During the six weeks that his jaws were wired together, Johnson could not open his mouth. He lived on a liquid diet. It was a month after the arch bars were removed before Johnson could eat regular food. He lost 18 pounds during that period and became depressed to the extent that he was referred to a psychiatrist. Although he visited the psychiatrist on two occasions, the psychiatrist was not called to testify.
Additional particles of glass were removed from Johnson's eyelid on December 8, 1969 and stitches were used to close that wound. On January 12, 1971 a tissue growth in the scar area of the eye laceration was removed under local anethesia without complications. The tissue growth had reappeared by the March 1972 trial date and one physician stated that he would remove it for $30 while another testified that his treatment would require hospitalization and that all costs would total $335.00. Neither could assure Johnson that the growth would not reappear and both related the growth to the injury received in the accident.
Plaintiff has permanent scarring on his face which was described as moderate in disfigurement. There were several vertical scars about one inch in length on the left side of Johnson's forehead, and a facial scar on the left side of his face about one inch in length.
Since an award of damages for personal injuries is of necessity somewhat arbitrary and also must vary greatly with the facts and circumstances of each case, the trial court is entrusted with large discretion in making such awards, which discretion ordinarily should not be disturbed on appellate review. White v. Robbins, 153 So.2d 165 (La.App. 3 Cir. 1963); Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 at 158 (1963).
We do not find an abuse of the trial court's discretion in making the award for damages. The trial court judgment is affirmed. Costs of this appeal are assessed to defendant State Farm Mutual Automobile Insurance Company.
Affirmed.