LANDRY, Judge.
Plaintiff (Market) brought this action to recover, as subrogee of its insured Southeast Louisiana Trucking Association, the amount paid said insured for the loss of a truck totally destroyed in an accident involving a truck owned by AAA Contractors, Inc. (AAA), the insured of Commercial Union Insurance Company (Commercial), and driven by AAA’s employee, Jerry Carmena. The named defendants are AAA, Commercial, Carmena and V. J. Nicosia and Bruce H. Hunt as Executive Officers of AAA. The trial court rendered judgment in favor of Market against Carmena and Commercial in the sum of $7,125.00 upon finding that Carmena was not acting within the scope and during the course of his employment by AAA, but that Carmena was an omnibus insured under Commercial’s liability policy covering AAA’s vehicles. Commercial has appealed the judgment against it. Market and Carmena have neither appealed nor answered Commercial’s appeal. We affirm.
In view of the procedural posture outlined above, Commercial and Market are the only parties before this court. Two *592 issues are presented: first, whether Carme-na was acting within the course and during the scope of his employment by AAA since he was on his way to lunch in his employer’s vehicle at the time of the accident; second, whether Carmena was an omnibus insured of Commercial.
The collision occurred at approximately 12:20 P.M., September 27, 1973, on Louisiana Highway 37 (Greenwell Springs Road). At the scene of the accident, the highway, a narrow two lane roadway, was straight and level. Carmena was driving a Mack truck belonging to AAA. The truck had attached a large flat bed semi-trailer which had no lights and no brakes. Carmena was proceeding south at a speed of about 30 miles per hour, and was attempting to pull into a driveway on his right to reverse his direction and proceed north. To make his intended turn, he pulled partly into the opposing lane of. travel. Carmena’s vehicle was being followed by a gravel truck driven by James A. Guidroz, employee of Louisiana Trucking Association. The accident occurred in the northbound lane as Guidroz was attempting to pass. Carmena was accompanied by a fellow worker, Donny Nicosia.
Carmena denied that he was attempting to turn onto the premises of an adjacent welding shop ■ to reverse his direction of travel. He also denied that he pulled into the left lane to allow sufficient room for him to make such a turn with his large truck and trailer. Donny Nicosia, however, testified that Carmena did intend to reverse his direction. In addition, Donny Nicosia, Guidroz and John Wells, who was following Guidroz, all testified that Carmena did pull into the left or passing lane. Guidroz and Wells added that Carmena drove into the opposing lane after Guidroz began to pass. The investigating officer fixed the point of impact in the northbound lane based on dirt and debris he noted at the scene. The trial court concluded the accident resulted solely from Carmena’s negligence. We agree with this determination.
The testimony concerning the issues of whether Carmena was acting within the scope and during the course of his employment by AAA and whether Carmena was driving the truck with permission of the named insured AAA is disputed, to say the least. Carmena, a mechanic in AAA’s employ, did not normally drive his employer’s vehicles. He did drive vehicles on the shop premises in Baton Rouge. He road-tested vehicles that he worked on and occasionally drove vehicles across the street from one lot to another. On the morning of the accident, V. J. Nicosia, AAA’s shop foreman, accompanied by Carmena and Nicosia’s 18 year old son, Donny, left AAA’s shop in Baton Rouge in a station wagon driven by Nicosia. They were en route to the site of a gravel pit situated about 25 miles distant, off the Greenwell Springs Road. The purpose of the trip was to dismantle a dragline which AAA had purchased and wished to bring to its shop. Lawrence Batiste, Jr., an employee of AAA, drove the Mack truck with attached trailer to the job site. On arrival at the site, V. J. Nicosia, who was in charge of the crew, determined that it was necessary to remove the boom from the dragline before the machine could be loaded on the semi-trailer for transport to Baton Rouge. It developed that the boom could not be lowered. Nicosia gave orders for Carmena and young Nicosia to continue removing bolts from the dragline boom while Nicosia and Batiste returned to AAA’s shop to obtain a cherry picker which Nicosia decided was necessary to assist in removing the boom of the dragline. The time of Nicosia’s departure is disputed. Carmena places the time at about 9:30 A.M.; Nicosia, his son and Batiste estimate that the time was about 10 to 11 A.M. Carmena also testified that after removing what bolts they could with hand tools left on the job by the elder Nicosia, Carmena and young Nicosia had no further work they could do, so they left about 11:30 A.M. to return to Baton Rouge in compliance with Nicosia’s orders.
Carmena’s testimony is contradicted by both Nicosias. The elder Nicosia testified that he gave Carmena and his son orders to remain at the site until his return with a cherry picker. He also testified that there *593 was sufficient work involved in unbolting the boom to occupy two mechanics for one or two days. Donny Nicosia testified that he and Carmena were not returning to Baton Rouge, but were en route to a grocery store situated on Greenwell Springs Road in the direction of Baton Rouge. After leaving the work site and proceeding south on Greenwell Springs Road toward the store, they decided they would prefer a hot lunch at a cafe that they had seen north of the work site earlier in the morning when they inadvertently passed the work site due to their unfamiliarity with the precise location of the dragline. According to young Nicosia, Carmena was in the act of turning into a semi-circular driveway in front of what appeared to be a welding shop situated on the west side of Greenwell Springs Road, so Carmena could change directions and proceed north. He also testified that his father gave them instructions to wait at the site until his father and Batiste returned with a cherry picker.
The pertinent policy language conferring omnibus coverage by Commercial reads as follows:
“II. Person’s Insured
“Each of the following is an insured under this insurance to the extent set forth below;
* * * * * *
(c) Any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:”
Commercial contends that the burden of proving implied consent rests upon the party alleging coverage by establishing circumstances which admit of no equivocation. Barletta v. Engram, 317 So.2d 703, (La.App. 4th Cir. 1975); Swanson v. Comeaux, 286 So.2d 117 (La.App. 4th Cir. 1973); and Holden v. Transamerica Insurance Company, 222 So.2d 302 (La.App. 1st Cir. 1969).
Under the circumstances of this case, we find no error in the trial court’s conclusion that the burden of proof was discharged satisfactorily. Carmena had frequently driven equipment of AAA on the job site for road testing. It is conceded by V. J. Nicosia and Bruce H. Hunt that Carmena had never been forbidden to drive a company vehicle and that on the day in question Nicosia did not tell Carmena not to drive the truck. It also appears from the testimony of Donny Nicosia that it was customary for AAA employees to drive company vehicles to lunch when work was being done away from the shop. Hunt testified that he would not have deemed Carmena’s use of the truck in going to lunch to be unreasonable or contrary to company policy if Carmena were capable of handling the vehicle properly. Nicosia testified that he did not intend for Carmena to use the truck but frankly admitted he did not tell Carmena not to drive the vehicle. We find as fact that Carmena was driving himself and Donny Nicosia to lunch. From the record we deduce that he was capable of handling the rig properly. Under these circumstances, it is immaterial that he did not have a chauffeur’s license. The burden consists of showing implied consent by a preponderance of evidence. Gremillion v. Goleman, 316 So.2d 810 (La.App. 1st Cir. 1975).
Commercial argues that the omnibus clause in its policy differs from that in most other policies because it omits the following language usually contained in such clauses:
“* * * provided his actual operation of (if he is not operating) the other actual use thereof is with the permission, or reasonably believed to be with the permission, of the owner and is within the scope of such permission, and . . .” (emphasis added by court).
Tersely put, Commercial urges that its omission of the above quoted language requires something more than the implied permission envisioned by policies containing such language. We find no merit in this argument. The early cases which interpret *594 ed “permission” as used in omnibus insurance clauses, dealt with language identical to that contained in Commercial’s policy. See Holden v. Transamerica Insurance Company, above; Hurdle v. State Farm Mutual Automobile Insurance Company, 135 So.2d 63 (La.App. 2d Cir. 1961). Both authorities proclaim that the “permission” required for coverage may be either express or implied. Moreover, Crandall v. Scott, 350 So.2d 922 (La.App. 4th Cir. 1977), cited by Commercial does not change this interpretation of such an insuring provision. On the contrary, it holds that the trial judge did not commit manifest error in finding that, under the facts involved, the driver did not have permission to drive the car.
It is unnecessary for us to determine whether Carmena was acting within the scope and during the course of his employment by AAA. Commercial’s liability is established as an omnibus insurer of Carme-na. AAA’s alleged liability is not before us because of Market’s failure to appeal dismissal of its claim against AAA under the doctrine of respondeat superior. La.C.C.P. Article 2133.
The judgment is affirmed at Commercial’s cost.
Affirmed.