469 So.2d 1001 (1985)
Mary FRANCOIS and Ruby Brooks
v.
Gary E. YBARZABAL, et al.
No. 84-CA-571.
Court of Appeal of Louisiana, Fifth Circuit.
April 15, 1985.
Rehearing Denied June 17, 1985.
*1002 Orlando G. Bendana, Wayne H. Carlton, Jr., New Orleans, for plaintiffs-appellants.
Hulse, Nelson & Wanek, Regel L. Bisso, New Orleans, for Sentry Ins., a Mut. Co., defendant-appellant.
Sessions, Fishman, Rosenson, Boisfontaine, Nathan & Winn, James Ryan III, Peter S. Title, New Orleans, for State Farm Mut. Auto. Ins. Co., defendant-appellee.
Henican, James & Cleveland, Robert Angelle, Metairie, for Protective Cas. Ins. Co., defendant-appellee.
Before CHEHARDY, KLIEBERT and DUFRESNE, JJ.
CHEHARDY, Judge.
This is a suit for personal injuries arising out of a head-on collision between two automobiles, which occurred on May 28, 1982 near the intersection of Veterans Highway and Tupelo Street in the Parish of Jefferson.
Plaintiffs are Mary Francois, the driver of one of the vehicles; her husband Harry Francois, III, the owner of that vehicle; Mrs. Francois' mother Ruby Brooks, a guest passenger; and her husband Clarence Brooks. The driver of the other vehicle involved was Earl A. Pradat, Jr., a 15-year-old minor, who was accompanied by Christopher Maffe, also a minor. That automobile was owned by Gary E. Ybarzabal.
Named defendants were Ybarzabal and his insurer, Sentry Insurance, a Mutual Company, which provides the primary coverage on defendant vehicle; Earl Pradat, Sr., father of the minor driver, and their insurer, State Farm Mutual Automobile Insurance Company, the excess carrier; Glenn Maffe, father of the minor passenger, and their insurer, AIU Insurance Company; and Protective Casualty Insurance Company, the uninsured/underinsured carrier of plaintiff automobile, which is owned by Mrs. Francois' husband.[1]
Following trial by jury the court granted motions for directed verdicts on the issue of negligence of Earl Pradat, Jr., and lack of contributory negligence on the part of Mary Francois. The issues of insurance coverages and damages were presented to the jury.
Conforming with the jury awards, judgment was rendered in favor of Mrs. Francois in the sum of $6,685 and in favor of Ruby Brooks for $18,315 against Pradat and Sentry Insurance (the Ybarzabal insurer). These amounts represent the $25,000 limit of liability of the Sentry policy. Mrs. Brooks was also awarded $1,880.57 against State Farm, the excess carrier of the Pradats.
*1003 Sentry has appealed and plaintiff's have answered the appeal requesting an increase in quantum.
The principal question for our determination here is whether or not young Pradat had permission to drive the Ybarzabal vehicle. In the event he did not have such permission, Sentry would have no liability.
These facts appear to be uncontested:
Gary Ybarzabal is the father of 13-year-old Steven Ybarzabal, and the brother and guardian of Kim Ybarzabal, aged 17. They all live together in Gary's home. The automobile was registered in Gary's name but was being paid for by Kim to provide her with transportation to get to school and to her part-time job. Gary is the named insured under the Sentry policy.
On the day of the accident, Earl and Chris went to the Ybarzabal home to visit Steven. Kim answered the door, spoke with the boys briefly, called Steven and went to the back of the house to clean up her room. She had left her keys on the sofa in the living room next to her purse.
At some point Earl picked up the keys and went outside to take a joy ride. At that time he admits he had no permission from anyone. Chris, Steven and Kim were still in the house. They did not know he was going and did not see him leave.
There is some difference of opinion as to what happened after that time.
Kim's version is that she was on her way to the laundry room and as she passed the living room she saw the two boys were gone. She looked through the living room window and saw that her car was gone too. She went right outside and saw her car two or three houses away, coming down the street. She was unable to see who was driving, but she rushed back into the house screaming for Stevie to help her try to stop the car.
Earl's version as to what happened after he took the car without permission is that after he drove around the block he returned to the front of Kim's house and saw Chris coming down the steps. He did not stop the car, but opened the door and let Chris in. Chris told him Kim said it was okay to drive if he put some gas in. Earl saw Kim at the door and she did not say or do anything so he thought he had permission. They drove only a few blocks when they were involved in the accident.
As to the first unauthorized taking, Earl claims it was on a dare from Steven. As to the "authorized" taking, he knew Kim had lent the car to other people. Therefore, when Chris said it was okay and when Kim did nothing when he saw her at the top of the steps, he thought he had permission to drive off at that time.
Chris testified he was in the house when Earl took off the first time, and he and Kim walked into Steven's room, looked out the window and saw Earl pull away. He claims Kim did not do or say anything. She walked to the front door, and when Earl came around to the front of the house again, Chris went out and Earl let him in the car. Since Kim did not do or say anything, he thought it was okay to go for a spin too.
Chris admitted Kim never told him to tell Earl they could take the car and denies telling Earl he had permission to drive or that he could have it if he put gas in the car.
Steven testified he left the room and the next thing he knew Earl was driving off with the car. He told Kim and she panicked. Chris then ran out of the house and when the car was three houses down the street, he jumped in with Earl and they drove off.
Mr. Ybarzabal was not at home when the incident occurred, but he had told Kim never to let anyone drive the car.
On cross-examination Kim testified she had lent the car out the previous year on two occasions. At one time she was giving a crawfish party and needed more cokes so she asked someone to drive to the store for them. The store is about one and a half blocks from the house. On the other occasion she had a flat tire and was in a hurry to go to work, so she asked someone to *1004 take it to the same store and put air in the tire.
In answer to a jury interrogatory, five of the six jurors found that at the time of the accident Earl Pradat reasonably believed he had permission to use the Ybarbazal automobile.
The pertinent provision of the Sentry policy provides coverage for:
"Anyone using with your permission, a car described on the Declaration Page, or any additional replacement or substitute car has the same rights and obligations that you have under the insurance." (Emphasis in policy.)
Under definitions we also find:

"You, your, yourself means the person named on the Declarations page and... a member of the family who is a resident of the household and who doesn't own a car."
These definitions make it clear that for coverage to arise any driver of the insured automobile must have been driving with the permission of the named insured (Gary Ybarzabal) or someone residing in his household (Kim). One of the primary issues before the trial court dealt with the question of permission to drive the Ybarzabal automobile and its effect upon insurance coverage.
The two policies whose coverage were at issue were the Sentry policy, which insured the Ybarzabal automobile, and the State Farm policy, which insured the Pradat automobile and covered Earl, Jr., as a member of his father's household.
Louisiana jurisprudence has established two standards for determining permission depending on the type of coverage at issue. These are differentiated in Johnson v. Aetna Casualty and Surety Co., 274 So.2d 769 (La.App.3rd Cir.1973).
That case is somewhat similar to the instant case in that at the time of the accident the defendant driver was operating a nonowned automobile. That automobile was insured by Aetna while the defendant driver was insured by State Farm.
The Johnson case held that coverage provided by the Aetna policy depended on the omnibus clause and it was necessary to establish permission of the named insured either express or implied.
On the other hand the State Farm coverage provided the driver, depended upon the "nonowned" automobile portion of his policy, for which it was only necessary that the driver reasonably believe he had permission of the owner.
The distinction establishes actual permission, either express or implied, as a requirement for coverage of the automobile being driven, while no permission was required for coverage of the nonowner driver, only "a reasonable belief" he had such permission.
The Johnson decision was followed in Employers Commercial Union Ins. Co. v. Bertrand, 306 So.2d 426 (La.App. 3d Cir. 1975).
A careful examination of the Sentry "plain talk" policy indicates that coverage exists only with express or implied permission of the insureds, therefore we find a "reasonable belief" to be insufficient to support coverage under the Sentry policy.
We also agree with Sentry's contention that plaintiff's have failed to prove by a Spreponderance of the evidence not only that Pradat had no permission to drive the Ybarzabal car, but also that he had no valid reason to believe that he did.
Because of our determination on these issues we find it unnecessary to address other contentions raised by appellant in its brief, and issues raised by appellees in their answer to the appeal.[2]
*1005 For the reasons assigned the judgment appealed from is reversed in part, and it is now ordered that there be judgment in favor of Sentry Insurance, a Mutual Company and against plaintiffs, Mary Francois, wife of/and Harry Francois, III, Ruby Brooks, wife of/and Clarence Brooks, dismissing their suit against that insurer.
It is further ordered that the judgment is also reversed insofar as it casts Sentry Insurance for any part of the expert witness fees or costs.
In all other respects the judgment appealed from is affirmed.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Plaintiffs later dismissed their suit against the Maffes and their insurer and against Allstate, following a compromise agreement. Also third-party demands were filed by various defendants, which are not pertinent here.
[2] In their answer to the appeal plaintiff's ask for an increase in quantum, or, alternatively judgment against Protective Insurance Casualty Company, their own uninsured/underinsured motorist carrier. Because of our judgment we do not reach the issues presented in the answer to the appeal.

However, we would point out that under LSA-C.C.P. art. 2133 an answer to an appeal is in the character of a cross appeal in which the appellee takes advantage of an appeal entered and perfected by an appellant, in the hope of procuring an alteration or amendment of the judgment rendered in a manner beneficial to the appellee.
An answer to an appeal does not have the effect of an appeal with respect to any portion of the judgment rendered in favor of a party not an appellant. Inasmuch as Protective Casualty Insurance Company is not an appellant herein, appellees' answer to the Sentry appeal would not permit a review of the judgment as to the other insurer which did not appeal. See Shelton v. Aetna Casualty & Surety Company, 334 So.2d 406 (La.1976); American Ins. Co. v. Holland, 401 So.2d 421 (La.App. 1st Cir.1981).