483 So.2d 602 (1986)
Mary FRANCOIS, et al.,
v.
Gary E. YBARZABAL, et al.
No. 85-C-1435.
Supreme Court of Louisiana.
February 24, 1986.
Dissenting Opinion February 25, 1986.
Rehearings Denied March 20, 1986.
Wayne H. Carlton, Jr., Orlando G. Bendana, Bendana & Carlton, New Orleans, for plaintiff-applicant.
*603 Regel L. Bisso, Hulse, Nelson & Wanek, James Ryan, III, Peter S. Title, Sessions, Fishman, Rosenson, Boisfontaine & Nathan, Brian D. Zeringer, Henican, James & Cleveland, Robert Angelle, William Argeros, Porteous, Hainkel, Johnson & Sarpy, New Orleans, for respondent.
WATSON, Justice.
This case concerns: (1) whether use of an automobile was permissive within the terms of an insurance policy; and (2) rights of a party answering an appeal against non-appealing parties.
Earl A. Pradat, Jr., a fifteen year old minor, was driving an automobile registered to Gary E. Ybarzabal on May 28, 1982, when he struck another car, injuring its driver, Ms. Mary Francois, and her mother/guest passenger, Ms. Ruby Brooks. The Francois vehicle was traveling in the right lane of Veterans Highway going west toward the airport. Pradat, either traveling east on Veterans or making a left turn off Tupelo Street, veered into Ms. Francois' lane of traffic, resulting in a virtual head-on collision. The Francois vehicle was pushed onto the right shoulder and Pradat sped away from the scene.

PROCEDURAL HISTORY
Ms. Francois and her husband, Harry Francois, III, together with Ms. Brooks and her husband, Clarence Brooks, filed suit in Jefferson Parish asking for medical expenses and other damages. Among the defendants were: Ybarzabal and his insurer, Sentry Insurance, A Mutual Company; Earl A. Pradat, Sr., father of the minor driver, and his insurer, State Farm Mutual Automobile Insurance Company; and the uninsured/underinsured carrier of the automobile owned by Ms. Francois' husband, Protective Casualty Insurance Company.[1]
The trial court granted directed verdicts as to the negligence of Earl Pradat, Jr., and the lack of contributory negligence by Ms. Francois.
Over the objection of counsel for Ybarzabal and Sentry, the trial judge instructed the jury that a "reasonable belief by Pradat that he had permission to use the vehicle would afford coverage under the owner's policy. The jury found that Pradat "reasonably believed" he had such permission and awarded $6,685 to Ms. Francois and $20,195.57 to Ms. Brooks.
Since Sentry's policy had $25,000 limits, judgment was entered in favor of Ms. Francois against Pradat, Sr., and Sentry for $6,685 and in favor of Ms. Brooks against Pradat, Sr., and Sentry for $18,315. Judgment was also rendered in favor of Ms. Brooks against Pradat, Sr., and State Farm, for $1,880.57 (the excess portion of the judgment). Because this award did not exhaust State Farm's limits of $25,000/$50,000, the judgment was silent as to Protective, the Francois' uninsured/underinsured carrier, effectively dismissing Protective from the suit.
Only Sentry appealed. Plaintiffs answered Sentry's appeal, requesting an increase in quantum against all defendants, and, alternatively, entry of judgment against Protective. The Court of Appeal reversed as to Sentry and concluded that plaintiffs' answer to the appeal did not permit a review of the judgment as to the other insurers who did not appeal. Francois v. Ybarzabal, 469 So.2d 1001 (La.App. 5th Cir.,1985). Plaintiffs' writ application was granted. 476 So.2d 337 (La.,1985).

ISSUES
Two issues are presented:
(1) Whether or not Pradat, Jr., had express or implied permission to borrow the automobile from its owner, which *604 would trigger the liability of the owner's insurer, Sentry; and
(2) If not, whether the judgment may be reformed to cast in liability State Farm and/or Protective, where only Sentry appealed and where plaintiffs attempted to assert the alternative liability of the other insurers only by answer.

FACTS
Kim Ybarzabal, aged seventeen, lives with her older brother and guardian, Gary Ybarzabal, his wife, and Gary's twelve year old son, Steven. Gary is the named insured under the Sentry policy. However, the automobile, registered in Gary's name because Kim was a minor, was being paid for by Kim and was used exclusively by her. Gary had given explicit instructions to Kim never to let another person drive her car; and, to his knowledge, she had not. Kim had loaned her car on two prior occasions.
Earl Pradat, Jr., and Chris Maffe lived in the same neighborhood as the Ybarzabals and visited frequently in their home. Earl had occasionally ridden in Kim's car as a passenger. Kim did not know whether or not Earl possessed a driver's license; he did not. Although he had received a few lessons from his father in the family car, he had been explicitly instructed not to drive outside his father's presence.
On the day of the accident, Kim had left her keys on the living room sofa next to her purse. After answering the door to admit Earl and Chris, she returned to her room. A short time later, Earl picked up the keys, and went for a joy ride, allegedly on a "dare" from either Chris or Steven. There are four different versions of the subsequent events:
Earl's version: He drove around the block, came back in front of Kim's house, saw Chris coming down the steps, did not stop, but opened the door to admit Chris. Chris told Earl that Kim said he could continue driving if he put some gas in the car. Kim was standing in the doorway.
Since she did not protest and had previously loaned the car, he thought he had permission to drive. The accident happened a few blocks away.
Chris's version: Kim was standing by him when they saw Earl drive off; Kim did not do or say anything; Chris thought it was all right to go for a spin. However, Kim did not tell Chris that Earl could take the car. Chris did not tell Earl that he had permission to drive if he put gas in the car.
Steven's version: When he left the room after Earl picked up the car keys, everyone was laughingit was more of a joke than a dare. Earl drove off in the car. Steven told Kim; she panicked and asked both Chris and Steven to stop Earl.
Kim's version: When she passed back through the living room, Earl and Chris were gone, and her car was gone. After she went outside, she saw the car coming down the street, but she could not tell who was driving. She ran back into the house and screamed at Steven to stop the car.

PERMISSION ISSUE
Louisiana has two jurisprudential standards for permission, depending on whether coverage of car or driver is involved, i.e., coverage which follows the car versus coverage which follows the driver. They are correctly distinguished in Johnson v. Aetna Casualty and Surety Co., 274 So.2d 769 (La.App. 3 Cir.,1973), which was followed by Employers Commercial Union Insurance Company v. Bertrand, 306 So.2d 426 (La.App. 3 Cir.1975).
In Johnson, the defendant driver was operating a non-owned automobile, insured by Aetna. The defendant driver was insured by State Farm. The Aetna coverage, which followed the car, depended upon the wording of the omnibus clause, which required actual permission, express or implied, from the named insured. The State Farm coverage, which followed the driver, depended upon the "nonowned" automobile clause of his own policy. The driver had to "reasonably believe" that he had the permission of the owner. Actual permission was not required.
*605 In the present case, the omnibus clause of the Sentry "plain talk" policy provides coverage for:
"Anyone using with your permission, a car described on the declaration page, or any additional replacement or substitute car, has the same rights and obligations that you have under this insurance."
Definitions in the policy provide:
"You, your, yourself means the person named on the declarations page and.... ".... a member of the family who is a resident of the household and who doesn't own a car or whose spouse doesn't own a car."
The omnibus and definitions clauses of Sentry's policy establish that coverage exists only with the express or implied permission of an insured. The trial court erred in instructing the jury that Sentry was liable if Pradat, Jr., "reasonably believed" he had permission; the reasonable belief in permission found by the jury is insufficient to support coverage by Sentry.
Plaintiffs had the burden of proving express or implied permission, in order to bring a non-owner-user of an insured automobile within the automobile's liability insurance coverage. Swanson v. Comeaux, 296 So.2d 267 (La.,1974); It is uncontroverted that Earl first commandeered Kim's car, without permission. Absent express permission, implied permission generally arises from a course of conduct by the named insured involving acquiescence in, or lack of objection to, the use of the vehicle.[2]
LSA-R.S. 32:402 requires a driver's license for the operation of an automobile.[3] Although Kim did not know whether Earl had a driver's license, it cannot be lightly inferred that she granted permission for use of her automobile by an unlicensed driver in violation of the above statute. Rogillio v. Cazedessus (concurring opinion of Sanders, J.), 241 La. 186, 127 So.2d 734 (1961);[4]Swanson v. Comeaux, supra.[5] Earl was two years younger than Kim and more a friend of twelve year old Steven, with whom he and Chris frequently played ball. Chris, Kim, and Steven emphatically denied that Kim told Chris to tell Earl he could use the car or that Chris imparted such a message to Earl.
Plaintiffs' misconstrue Market Insurance Company v. Commercial Union Insurance Company, 357 So.2d 591 (La.App. 1 Cir.,1978) as holding that "implied permission" is snyonymous with "reasonable belief". Rather, Market held that the "permission required for coverage may be either express or implied; the omission of the words "reasonably believed" from a policy do not mean that only express permission affords coverage.
The Court of Appeal properly found that plaintiffs failed to carry their burden of proving that Pradat, Jr., had express or implied permission to drive Kim's automobile.

LIABILITY OF STATE FARM AND/OR PROTECTIVE
Under LSA-C.C.P. art. 2133, plaintiffs may, by answering an appeal, seek alteration of the judgment vis-a-vis appellant Sentry. Plaintiffs' answer, however, does not have the effect of an appeal as to any portion of the judgment rendered either in favor of, or against, a party who has not appealed. Vicknair v. Hibernia Building Corp., 479 So.2d 904 (La.,1985); Shelton v. Aetna Casualty & Surety Company, *606 334 So.2d 406 (La., 1976). Once Sentry chose to challenge its unfavorable $25,000 judgment, it became incumbent upon plaintiffs to separately appeal against State Farm and Protective in order to protect their position against those parties. Similarly, defendant, Earl Pradat, Sr., had to separately appeal and request that the judgment be reformed in the event that Sentry was dismissed from the suit.
Neither plaintiffs nor State Farm appealed the $1,880.57 excess judgment against State Farm and that judgment is final.
The Court of Appeal astutely summarized the consequences of merely answering an appeal:
"... under LSA-C.C.P. art. 2133 an answer to an appeal is in the character of a cross appeal in which the appellee takes advantage of an appeal entered and perfected by an appellant, in the hope of procuring an alteration or amendment of the judgment rendered in a manner beneficial to the appellee.
"An answer to an appeal does not have the effect of an appeal with respect to any portion of the judgment rendered in favor of a party not an appellant. Inasmuch as Protective Casualty Insurance Company is not an appellant herein, appellees' answer to the Sentry appeal would not permit a review of the judgment as to the other insurer which did not appeal, [citations omitted]." 469 So.2d at 1004-1005, Footnote 2.
Both plaintiffs and defendant Earl Pradat, Sr., cite a number of cases for the proposition that a judgment may be reformed to cast in judgment the excess and/or uninsured motorist carrier where a court has reversed a finding of liability by the primary carrier. Those cases are factually and procedurally distinguishable from the case at bar. In each instance, the parties were properly before the appellate court by a separate appeal or an incidental demand automatically brought up under LSA-C.C.P. art. 2133.[6]
For the foregoing reasons, the Court of Appeal judgment is affirmed.
AFFIRMED.
CALOGERO, J., concurs and assigns reasons.
DENNIS, J., dissents for reasons assigned by LEMMON, J.
LEMMON, J., dissents and assigns reasons.
LEMMON, Justice, dissenting.
The jury, in answering interrogatories, found that plaintiffs sustained damages totaling $26,880.57 and that both Sentry and State Farm provided coverage.[1] Because there was no dispute that Sentry's coverage was primary if both were liable, the judgment rendered pursuant to the verdict recognized that Sentry's liability based on its primary coverage could not exceed $25,000 and that State Farm's liability based on its excess coverage was for the remainder of the total amount of the damages, which calculated out mathematically to $1,880.57. When Sentry appealed, neither plaintiff nor State Farm filed independent appeals. Since both Sentry and State Farm had denied coverage, the judgment decreeing that State Farm provided coverage and was liable for the amount in excess of the primary coverage became definitive when State Farm failed to appeal.
The majority now holds that State Farm's now definitive liability cannot exceed $1,880.57, the amount stated in the judgment. The majority fails to consider, however, that the true import of the judgment against State Farm was that State Farm was liable to plaintiff for any *607 amount (up to State Farm's policy limits) in excess of Sentry's coverage. The figures mentioned in the judgment were merely mathematical calculations which held true only as long as Sentry's primary coverage up to $25,000 remained undisturbed. When the court of appeal set aside the finding that Sentry provided primary coverage, the trial court's judgment which made State Farm liable for the amount in excess of any primary coverage by Sentry came into play and required the judgment of the court of appeal to reflect the adjusted mathematical calculations.
The critical question is whether it was necessary for plaintiffs to appeal in order to recover more than $1,880.57 from State Farm in the event that Sentry was successful on appeal. The answer depends on the effect to be accorded to the mention in the judgment of the amount of $1,880.57. Because the judgment found both insurers liable and restricted Sentry's liability according to the terms of its policy, plaintiffs had no reason to appeal. The mathematical calculation in the judgment of the amount ($1,880.57) by which the total damages exceeded the primary coverage was mere surplusage. The judgment did not require the mention of any figures except the total amount of damages, and the unnecessary portion of the judgment which simply performed the mathematical calculations should be ignored. The effect of the majority decision is to deprive these tort victims of their insurance recovery because they did not appeal from unnecessary language in the judgment.
NOTES
[1] Other defendants were Glenn Maffe, father of Earl Pradat, Jr.'s minor passenger, and his insurer, AIU Insurance Company; and Allstate Insurance Company, the uninsured/underinsured carrier of Ms. Brooks. Plaintiffs subsequently compromised with the Maffes; their insurer, AIU; and with Allstate, and dismissed the suit as to them and all related third party demands. Sentry filed no third party demands. A number of third party demands filed by other defendants are not at issue.
[2] See Wolfe v. Employers Commercial Union Insurance Company, 272 So.2d 714 (La.App. 3rd Cir.,1973).
[3] LSA-R.S. 32:402 reads in pertinent part:

"It shall be unlawful for any person to drive a motor vehicle on any public street, road or highway of this state unless he has been issued a license by the department in accordance with the provisions of this Chapter...."
[4] Son of named insured left keys with minor brother of friend in case he had to move the car which was blocking other cars in the drivewayno permission found to take the car on the highway.
[5] Uncle gave his wallet and keys to his minor nephew to hold while he played ballno permission found to go to the locked car some distance away and take the car out for a drive.
[6] Bond v. Commercial Union Assurance Companies, 387 So.2d 617 (La.App. 3rd Cir.,1980), affirmed on other grounds, 407 So.2d 401 (La.,1981); Williams v. Buckelew, 246 So.2d 58 (La.App. 2nd Cir.,1970); Robertson v. Perry, 370 So.2d 596 (La.App. 4th Cir.,1979), writ not considered, 372 So.2d 1048 (La.,1979); Beauregard v. Salmon, 211 So.2d 732 (La.App. 2nd Cir.,1968), writ refused, 252 La. 883, 214 So.2d 550 (1968).
[1] The conclusion that both provided coverage is based on the affirmative answer to the interrogatory concerning permissive use.