WATKINS, Judge.
Plaintiff, a pedestrian who received personal injuries when he was struck by a pickup truck, appeals a judgment in favor of the alleged owner of the truck, James Edwards, and Edwards’ insurer, General Agents Insurance Company of America, Inc. (GAINSCO).
Charles Butler was attempting to cross Louisiana Highway 21, just south of Boga-lusa, Louisiana, at 1:00 a.m. on September 28, 1985, when he was struck by a 1979 Toyota pickup truck being driven by Gordon Perkins. Mr. Butler originally sued Mr. Perkins, Mr. James Edwards, GAIN-SCO, and Mr. Steve Edwards.[2] However, the matter went to trial without jury against only Mr. James Edwards and GAINSCO. Finding that Mr. Perkins did not have permission to drive the truck, the district court found it unnecessary to reach the issue of ownership of the truck. We affirm.
FACTS
During 1985 Mr. James Edwards owned and operated a business known as “Edwards Used Foreign Cars” in Crossroads, Mississippi. One of the persons employed by Mr. Edwards was the defendant Mr. Perkins, who was allowed to live in a trailer on the business property. At the time of the accident Mr. Perkins was driving a pickup truck he had taken from the car lot. As a result of the accident, he was charged with and pled guilty to driving while intoxicated, driving while his license was under suspension, and driving left of the center of the highway. Mr. Perkins’s drinking problem was common knowledge to all the witnesses who testified at trial.
Prior to September 28, 1985, Mr. Edwards was working in Sugarland, Texas; usually he would travel to Mississippi on weekends to check on his business there. However, on Friday, September 27, 1985, Mr. Edwards called Mississippi and requested that his son, Nathan, drive Mr. Edwards’ truck and bring some tools to him in Texas.
Before he left for Texas, Nathan Edwards hid the keys to the Toyota pickup truck under the floor mat. The truck was one of three drivable vehicles on the car lot. During the late afternoon after Nathan left Mississippi, Mr. Walter Edwards, a brother of Mr. James Edwards, for security purposes removed the keys from the other two vehicles. He attempted to remove the keys from the Toyota pickup truck, but finding that there were no keys *1311 in it, he assumed that Nathan had taken them with him to Texas.
Mr. Walter Edwards testified at trial that prior to going home with the keys, he drove Mr. Perkins to Bogalusa to buy some groceries and then drove him back to the trailer in Mississippi. The next day the Edwards family heard about the accident involving the plaintiff and learned that Mr. Perkins had taken and driven the Toyota pickup truck some time between late Friday afternoon and the early hours of Saturday.
PERMISSIVE USE OF VEHICLE
The disputed issues at trial were purely factual:
(1) Did Mr. Perkins have the permission, express or implied, of the insured named in the GAINSCO policy to operate the Toyota pickup truck?
(2) Was the Toyota pickup truck an insured vehicle under the GAINSCO policy, or was it a vehicle owned by Nathan Edwards, son of the named insured?
Urging error on the part of the trial court,[3] the plaintiff raises the same issues on appeal. Because we conclude that the trial court correctly determined the fact of lack of permission to drive the truck, we find it unnecessary to reach the issue of ownership of the vehicle and the other issues raised in the plaintiffs brief.
A plaintiff alleging liability of an insured and his insurer for the negligence of a non-owner-user driver must prove that the driver had permission. See Swanson v. Comeaux, 296 So.2d 267 (La.1974), holding that the burden of proof is with the plaintiff to establish express or implied permission to trigger the automobile’s liability insurance coverage. However, Louisiana jurisprudence reveals two standards for permission, depending upon the type of coverage involved: coverage which follows the car or coverage which follows the driver. Francois v. Ybarzabal, 483 So.2d 602 (La.1986). Generally, the omnibus clause of the insurance policy which follows the car will require actual permission, express or implied, from the named insured.[4] Coverage which follows the driver will depend upon the nonowned-automobile clause of the driver’s own policy, and proof that the driver “reasonably believed” he had permission of the owner suffices. For a distinction between the two, see Johnson v. Aetna Casualty & Surety Co., 274 So.2d 769 (La.App. 3d Cir.1973), followed by Employers Commercial Union Ins. Co. v. *1312 Bertrand, 306 So.2d 426 (La.App. 3d Cir.1975).
Since there was no evidence that Mr. Perkins had automobile insurance of his own, the only standard of permission relevant to the instant case is actual permission. We agree with the trial court that the plaintiff failed to prove by a preponderance of the evidence that Mr. Perkins had the express or implied permission of either Mr. James Edwards or his son Nathan to drive the truck. To the contrary, the witnesses unanimously testified that both father and son had expressly forbidden Mr. Perkins to drive any of their vehicles.
Concerning the express denial of permission, the plaintiff argues on appeal that the witnesses’ testimony was self-serving and/or biased in favor of the defendants. However, we note that the only reasonable inference to be drawn from the spontaneous testimony of Mr. Walter Edwards, concerning his transporting of Mr. Perkins to Bogalusa for groceries, is that Mr. Perkins was without a vehicle he could use. If Mr. Perkins had permission to use the Toyota pickup truck, he would not have needed the aid of Mr. Walter Edwards for this errand.
At the trial counsel for plaintiff, apparently in an attempt to prove that Mr. Perkins needed the truck later that evening for an “emergency” (see footnote 4), did not succeed in eliciting an admission from Mr. James Edwards that he would have granted Mr. Perkins permission to use the truck for an emergency. Whether Mr. Perkins reasonably believed he could use the truck for an emergency is immaterial because the issue is whether he had actual permission, either express or implied, under the omnibus clause of the GAINSCO policy.
Finally, permission cannot be inferred from the fact that Nathan Edwards left the keys to the truck under the floor mat. See Gremillion v. Goleman, 316 So.2d 810 (La.App. 1st Cir.1975), wherein implied permission was absent despite the fact that the named insured’s son had entrusted the keys, for safekeeping, to the person who eventually took the vehicle and drove it. Nor can permission to drive the Toyota truck be inferred from the fact that on a previous occasion Mr. Edwards pressed charges against Mr. Perkins for unauthorized use of a vehicle but ultimately had the charges dropped. The witnesses explained that the reason for dropping the charges was to allow Mr. Perkins to return to work for Mr. Edwards to pay for the damage. Plaintiff’s suggestion that we infer from the first unauthorized use and its subsequent disposition that the second use was authorized is untenable.
Accordingly, we affirm the judgment of the trial court. Appellant is to pay costs of appeal.
AFFIRMED.

. The record reveals a discussion at trial concerning the identity of Steve Edwards. Apparently, plaintiff was attempting to sue Nathan Edwards, the son of James Edwards. Service was made on no individual other than James Edwards.

. One of the errors urged by plaintiff is that the trial court applied a presumption against him for failure to call Mr. Perkins as a witness. We can find nothing in the record to indicate that the trial judge applied this presumption, but even if he did, the error was harmless. The evidence of lack of permission is overwhelming, and we would be hard pressed, indeed, to imagine any testimony by Mr. Perkins which could overcome the evidence and preponderate in favor of permissive use of the vehicle.

. The GAINSCO policy defined “automobile hazard" as:
(1) [T]he ownership, maintenance or use (including loading or unloading) of any automobile for the purpose of garage operations, and (2) the occasional use for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in garage operations, and (3) the ownership, maintenance or use of any automobile owned by the named insured while furnished for the use of any person.
An endorsement to the GAINSCO policy further provided:
FURNISHED AUTOMOBILES EXCLUSION: It is hereby, agreed and understood that Bodily Injury and Property Damage coverage for those Automobiles owned by the Named Insured and furnished for the regular use of Owners, Partners, Executive Officers, Employees, spouses, children or relatives of the foregoing; or any other person or organization is limited to the following scheduled persons or organizations and the drivers listed below:
[[Image here]]
James Edwards ... Avis Edwards.
A) Coverage is automatically extended to additional furnished automobiles and/or drivers that arise during the policy period as long as the Named Insured notifies the Company within 30 days following the actual change and proper premium is charged therefore.
B) Coverage shall extend to the occasional use of a Furnished Automobile by a nonscheduled driver for emergency purposes as long as the non-scheduled driver has permission of a scheduled driver and the actual use is within the scope of such permission.