| WILLIAMS, Judge.
The defendant, State of Louisiana, Department of Transportation and Development (DOTD), appeals a judgment in favor of the plaintiff, Tommy Foster. The trial court assessed 70% fault to DOTD for causing the accident, 15% fault to the defendant, Unopened Succession of Lester Glenn Smith (“Succession of Smith”) and 15% fault to plaintiff. The court awarded plaintiff damages of $19,970.37, an amount reflecting the parties’ proportional fault. For the following reasons, we reverse in part, affirm in part and render.
FACTS
On August 22, 1997, Tommy Foster drove to the parking lot of the Best Western Motel in Winnfield, Louisiana, to mail *402 a letter. While walking toward the mailbox in front of the motel, Foster briefly looked around when he heard a voice. As he turned forward and took another step, Foster tripped on a pipe protruding from the ground and fell, injuring his nose, face, hands and knees.
During the period from 1982 to 1984, DOTD had expanded a state highway and constructed a concrete curb along the roadway. At the time of the accident, the pipe extended from under the curb marking the edge of DOTD’s right of way and out over the property owned by the Succession of Smith and used by Kwik Cheek of Winnfield, Inc. d/b/a Best Western Motel of Winnfield (“Best Western”).
Following the accident, Foster was transported to the Winn Parish Medical Center complaining of injuries to his nose, face, hands and knees. The x-rays of Foster’s nose were read by a radiologist, who did not find any | ^evidence of a nasal fracture. On September 2, 1997, Foster saw his family physician, Dr. Randolph Williams, with a complaint of pain and tenderness in his nose. Dr. Williams reviewed the x-rays and opined that Foster had sustained a non-displaced fracture of the nasal septum. When Dr. Williams saw Foster on September 27, 1997, the appearance of his nose had improved. However, Foster continued to feel tenderness around the bridge of his nose for approximately three months.
Almost two years later, in May 1999, Foster sought treatment with Dr. James Pate, an ear, nose and throat specialist, complaining of nasal congestion, sinusitis, facial swelling and pain. After an examination, Dr. Pate diagnosed Foster with a deviated nasal septum and hypertrophic turbinates and recommended surgery. Dr. Pate performed nasal septal surgery with partial removal of Foster’s turbinate tissue. Dr. Pate last saw Foster on May 19,1999.
Subsequently, the plaintiff, Tommy Foster, filed a petition for damages against the defendants, Succession of Smith, Best Western and DOTD. After a trial, the court issued written reasons for judgment finding that the pipe protruding from the ground presented a hazardous condition resulting from DOTD’s highway construction. The trial court found that DOTD knew or should have known about the dangerous condition and was negligent in failing to remove the pipe. The court further found that the negligence of the property owner and the plaintiff also contributed to the accident. The trial court allocated 70% fault to DOTD in causing the accident, 15% fault to the Succession of Smith and 15% fault to plaintiff.
|aThe trial court found that as a result of the accident, the plaintiff had sustained a fractured nose that aggravated his existing sinus condition and required nasal surgery by Dr. Pate. The court awarded plaintiff medical expenses of $7,499.22 and general damages of $9,000 for past and future pain and suffering, $3,500 for mental anguish, $2,000 for loss of intellectual or physical enjoyment and $1,500 for permanent disability.
The trial court rendered judgment in favor of plaintiff against DOTD in the amount of $16,445.49 and against the Succession of Smith in the amount of $3,524.88, reducing the damage award by the percentages of fault. The court assessed the defendants “with all costs herein, including expert witness fees.” DOTD appeals the judgment. Answers to the appeal have been filed by plaintiff and by Succession of Smith and Best Western.
DISCUSSION
DOTD contends the trial court erred in assessing 70% fault to the state in causing *403 the accident. DOTD argues that it is not liable because the evidence failed to show that the state knew of the alleged hazard.
In order to recover against a public entity for damages due to a defective condition, the plaintiff must prove by a preponderance of evidence: (1) the thing that caused the damages was in the defendant’s custody; (2) the thing was defective due to a condition that created an unreasonable risk of harm; (3) the defendant possessed actual or constructive notice of the defect, yet did not take corrective action within a reasonable period of time; and (4) the defect was a cause in fact of the plaintiffs harm. LSA-R.S. 9:2800; Jones v. Hawkins, 98-1259 (La.3/19/99), 731 So.2d 216; Long v. State DOTD, 37,422 (La.App.2d Cir.11/24/03), 862 So.2d 149. Proof by a preponderance of evidence means that, when taken as a whole, the evidence shows that the fact or cause sought to be proven is more probable than not. Whatley v. City of Winnfield, 35,132 (La.App.2d Cir.12/5/01), 802 So.2d 983.
A court of appeal should not set aside a trial court’s finding of fact in the absence of manifest error or unless it is clearly wrong. Stobart v. State Dept. of Transp. & Development, 617 So.2d 880 (La.1993). The task of a reviewing court is to assess whether the fact finder’s resolution of conflicting evidence was reasonable in light of the record as a whole. Fowler v. Wal-Mart Stores, Inc., 30,843 (La.App.2d Cir.8/19/98), 716 So.2d 511.
Prior to trial in the present case, the parties stipulated that DOTD’s “right of way line” was the edge of the concrete curb and that the pipe protruded “from under the right of way over the property of Glenn. Smith.” A former DOTD employee, Carlton Bennett, estimated that the state had built the concrete curb marking the edge of the highway right of way sometime between the years of 1982 and 1984. Bennett testified that he took photographs of the accident scene in April 2002 and that the pipe appeared to extend “underneath ... the concrete curb toward the highway.” Bennett stated that he had not visited the accident scene prior to that time. He did not say that the pipe was placed there by the state or indicate how long the pipe may have been present in that location.
The plaintiff testified that while he was walking toward the mailbox | Bon the day of the accident, he heard someone yelling and turned his head to look. As he, was turning back around, he tripped on the, pipe and fell. The plaintiff stated that the pipe was sticking out from under the curb and that the next day he took photographs at the scene from inside his vehicle. He testified that when he returned to the area at a later date, the pipe had been cut back closer to the curb and that he observed what appeared to be electrical wires inside the pipe. Plaintiff stated that he placed a 12-inch long piece of metal all the way into the pipe, which extended underneath the curb toward the highway. Plaintiff testified that although he had previously used the same mailbox several times, he had not walked along the particular path where the pipe was protruding until the day of the accident.
Our review of this record demonstrates an utter lack of evidence regarding the duration of time in which the pipe had protruded from the ground before the accident, the identity of the party who placed the pipe at that location or whether there was any connection between construction of the curb and placement of the pipe. There was no testimony describing the condition of the pipe, such as whether it appeared worn, weathered or rusted or seemed new.
*404 The evidence does not indicate that the pipe was embedded in the curb, as the plaintiff asserts in his brief. To the contrary, the plaintiff testified himself that the pipe was under the curb and appeared to have “electrical wire” inside. Nor was there any testimony or documentation presented to indicate that the pipe would have been visible, or had even been installed, at the time of the highway project’s completion.
| fiBased upon the lack of evidence in this record, the trial court was clearly wrong in finding that the pipe was present when the highway project was completed and could have been discovered through a routine inspection by DOTD. Thus, the record does not provide a reasonable factual basis to support a finding that the plaintiff proved by a preponderance of evidence that DOTD possessed actual or constructive notice of the dangerous condition. Consequently, we must conclude that the trial court erred in imposing liability upon DOTD for the plaintiffs injuries. In reaching this conclusion, we pretermit a discussion of DOTD’s remaining assignment of error regarding damages and of plaintiffs answer alleging a frivolous appeal and requesting that DOTD be assessed with all court costs.

Property Owner’s Answer on Issue of Liability

In their answer to DOTD’s appeal, Best Western and Succession of Smith contend the trial court erred in finding them liable for causing the accident and in awarding excessive damages. The defendants argue that they are not liable because plaintiff failed to satisfy his burden of proving their knowledge of the defect and that the surgical expenses were not related to the plaintiffs accident.
Appeal ? is the exercise of the right of a party to have a judgment of a trial court revised, modified, set aside or reversed by an appellate court. LSA-C.C.P. art.2082. When a devolutive appeal has been filed timely, an appellee who seeks to have the appealed judgment modified, revised or reversed as to any party may take a devolutive appeal within 60 days of the expiration of the delay for applying for a new trial, or within ten days of the 17clerk’s mailing of the notice of the first devolutive appeal in the case, whichever is later. LSA-C.C.P. art.2087. The term “appel-lee” includes any non-appellant party to a suit, whether involved in the appeal or not. Waguespack v. Prosperie, 592 So.2d 460 (La.App. 5th Cir.1991).
An appellee shall not be obliged to answer the appeal unless he desires to have the judgment modified, revised or reversed in part or unless he demands damages against the appellant. The answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in the answer. LSA-C.C.P. art. 2133. Thus, under Article 2133 an answer to an appeal is in the nature of a cross appeal in which the appellee takes advantage of an appeal entered by an appellant, in the hope of procuring a beneficial alteration or amendment of the judgment rendered. An answer to an appeal does not have the effect of an appeal with respect to any portion of the judgment rendered in favor of a party who is not an appellant. Francois v. Ybarzabal, 483 So.2d 602 (La.1986).
In the present case, only DOTD appealed the judgment. Best Western and Succession of Smith answered DOTD’s appeal seeking reversal of the court’s imposition of liability against them or, alternatively, reduction of the damage award. By answering the appeal, Best Western and Succession of Smith may seek altera *405 tion of the judgment vis-a-vis the appellant, DOTD. However, their answer does not have the effect of an appeal as to any portion of the judgment rendered either in favor of or against a party who has not appealed. Francois v. Ybarzabal, supra.
| ^Inasmuch as the plaintiff is not an appellant herein, the answer filed by Best Western and Succession of Smith does not permit a review of the judgment against them and in favor of the plaintiff as to the imposition of fault and the award of damages. Under Articles 2087 and 2133, absent an appeal by plaintiff, Best Western and Succession of Smith were required to separately appeal and request that the judgment be reversed or modified. Neither the plaintiff nor Best Western and Succession of Smith appealed the judgment awarding plaintiff damages in the amount of $3,524.88 (15% of the total damages assessed) against Succession of Smith. Consequently, that part of the judgment is final and shall not be disturbed.

Court Costs

In their answer, Best Western and Succession of Smith contend the trial court erred in failing to assess court costs in proportion to the defendants’ percentages of fault. They argue that their share of the costs should not exceed 30% of the total amount since the court allocated 70% fault to DOTD.
In any suit against the state, the trial or appellate court, after taking into account any equitable considerations applicable under LSA-C.C.P. arts.1920 or 2164, may grant in favor of the successful party after judgment against the state, an award of such party’s court costs as the court deems proper, but if awarded, shall express such costs in a dollar amount in a judgment of the court. LSA-R.S. 13:5112. The appellate court shall render any judgment which is just, legal and proper upon the record on appeal and may tax the costs of the lower or appellate court against any party to the suit 19as may be considered equitable. LSA-C.C.P. art. 2164.
In light of this court’s reversal of the allocation of fault against DOTD, the assessment of court costs against DOTD in the judgment is also reversed. We note that court costs were not properly assessed against the state in the present case, because the trial court did not express such costs in a specific dollar amount in the judgment as required by Section 5112. Pursuant to Article 2164, we shall assess costs at the district court and on appeal equally between plaintiff and Best Western and Succession of Smith.
CONCLUSION
For the foregoing reasons, that part of the trial court’s judgment awarding damages against the defendant, State of Louisiana DOTD, and assessing court costs is reversed. Costs, including expert witness fees, at the district court and on appeal are hereby assessed one-half to the plaintiff, Tommy Foster, and one-half to the defendants, Unopened Succession of Lester Glenn Smith and Kwik Check of Winnfield, Inc. d/b/a Best Western Motel of Winn-field, Inc. The judgment is otherwise affirmed.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.