WHIPPLE, J.
| aIn this appeal, the Louisiana Department of Transportation and Development (hereinafter referred to as “the DOTD”) challenges the trial court’s judgment that: (1) issued a preliminary injunction restraining and prohibiting the DOTD from awarding a particular construction contract to any bidder other than plaintiff, Gibson & Associates, Inc. (referred to herein as “Gibson”); and (2) issued a writ of mandamus directing the DOTD to award the contract for the projects at issue to Gibson as the low responsible bidder and to execute a contract with Gibson in accordance with the bid proposal and the contract plans and specifications as advertised.
The intervenor, Lamplighter Construction, L.L.C., (referred to herein as “Lamplighter”) answered the appeal, aligning itself with, and adopting the position taken by, the DOTD.
For the following reasons, we amend in part and affirm, as amended; reverse in part and remand; and deny Gibson’s motion to strike brief.
FACTS AND PROCEDURAL HISTORY
This matter involves the awarding of a DOTD construction contract on State Project Nos. 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 and 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, for bridge joint repairs and replacements on Interstates 10 and 110 in East Baton Rouge and Iberville Parishes.1 Because the project was a federal aid project, compliance with the required contract provisions for a IsDisadvantaged Business Enterprise (“DBE”) was mandatory.2 Thus, *1131the Construction Proposal included the “Required Contract Provisions for DBE Participation in Federal Aid Construction Contracts (DBE Goal Project),” which provided that Form CS-6AAA (the “Bidder’s Assurance of DBE Participation” form) and attachments “shall” be timely submitted to the DOTD and that the apparent low bidder’s failure to submit the Form CS-6AAA “shall” constitute just cause for the rejection of the bid.
On January 27, 2010, the project was first let, and the apparent low bidder was TOPCOR Services, Inc. (“TOPCOR Services”), which was thereafter notified that its completed Form CS-6AAA must be submitted within ten days of the letting date. However, TOPCOR Services did not timely submit to the DOTD the required CS-6AAA, thus resulting in its disqualification. Moreover, because of its failure to comply with the requirements of the DBE regulations, TOPCOR Services was barred from rebidding on the project should the project be re-advertised.
Gibson was the next lowest bidder, but the DOTD did not accept its bid. Instead, the DOTD rejected all other bids and re-advertised the project |4in the spring of 2010, with a letting date of April 14, 2010. When the bids were opened on April 14, 2010, Lamplighter Construction, L.L.C. (“Lamplighter”) was the apparent low bidder. However, the DOTD project control administrator was then notified that Lamplighter should be disqualified from bidding because it and the previously disqualified TOPCOR Services were possibly affiliated entities or controlled or owned by the same individuals. The DOTD then researched any connections between the companies through the Louisiana Secretary of State website and the Louisiana Contractors Licensing Board filings.
Based on this independent research, the project control administrator determined that a principal officer or owner of Lamplighter was also a principal officer or owner of TOPCOR Services, the original apparent low bidder which was disqualified from bidding. Thus, the DOTD concluded that Lamplighter was also ineligible to bid and its bid would be rejected as irregular, in accordance with Louisiana Standard Specifications for Roads and Bridges, Specification § 102.08(g).3 Accordingly, Lamplighter was then listed as “irregular” on the bid tabulation, and Gibson, which had again been the second lowest bidder, became the apparent low bidder.
Lamplighter then protested the DOTD’s determination that its bid should be considered irregular, asserting that it was a “distinct and separate contracting entity” from TOPCOR Services. Following a review of documentation submitted by Lamplighter in support of its protest,4 the | sDOTD chief engineer determined that Lamplighter should be reinstated as the low bidder and awarded the contract.
After the DOTD made its decision to reinstate Lamplighter as the low bidder, it notified Gibson that its status had again changed to second low bidder. Gibson then filed a protest of the DOTD’s decision to reinstate Lamplighter as the low bidder. Following a hearing on Gibson’s protest, the DOTD chief engineer notified Gibson, by letter dated May 27, 2010, that he had *1132reaffirmed his prior decision to reinstate Lamplighter as the apparent low bidder for the project at issue. The following day, the DOTD notified Lamplighter that it had been awarded the contract.
On the same day that Lamplighter was notified that it had been awarded the contract, May 28, 2010, Gibson filed a petition for a temporary restraining order, preliminary injunction, permanent injunction, declaratory judgment, and mandamus. Through its petition, Gibson sought to enjoin the DOTD from awarding and executing the construction contract to any bidder other than Gibson. It further sought a declaratory judgment, declaring: (1) that the bid submitted by Lamplighter is irregular pursuant to Standard Specification § 102.08(g); (2) that pursuant to LSA-R.S. 48:250, et seq., Lamplighter’s bid must be rejected; (3) that any contract entered into by the DOTD with Lamplighter is null and void; and (4) that Gibson is the low responsible bidder to bid according to the contract, plans, and specifications and, as such, is entitled to be awarded the project. Finally, Gibson sought a writ of mandamus ordering the DOTD to accept Gibson’s bid and execute the contract with Gibson for the construction of this project.
A TRO was issued that day, prohibiting the DOTD from awarding the contract to any bidder other than Gibson or, if the contract had been awarded, from implementing or executing the terms and conditions of any | fisuch contract, and a hearing on Gibson’s request for a preliminary injunction was set for June 15, 2010. The TRO was subsequently continued in full force and effect by order dated June 7, 2010.
In response to Gibson’s petition, the DOTD filed exceptions of nonjoinder of an indispensable party, i.e., Lamplighter, and improper use of summary proceedings, an answer, and a reconventional demand for dissolution of the TRO, damages for its wrongful issuance, and attorney’s fees.
At the June 15, 2010 hearing, the trial court considered and denied the exceptions filed by the DOTD. Lamplighter then orally intervened for purposes of opposing the injunctive relief requested.5 At the conclusion of the hearing, the trial court extended the TRO and took the matter of the preliminary injunction under advisement. The TRO was again extended on June 24, 2010.
Thereafter, on June 25, 2010, the trial court issued written reasons for judgment, finding that TOPCOR Services and Lamplighter have a principal officer and/or owner in common and, thus, that the plain language of Standard Specification § 102.08(g) mandated a finding that Lamplighter was ineligible to bid. Accordingly, the trial court rendered judgment: (1) issuing a preliminary injunction prohibiting the DOTD from awarding the construction contract to any bidder other than Gibson or, in the event the contract had been awarded, from performing or executing the terms thereof; |7and (2) issuing a writ of mandamus directing the DOTD to award the contract to Gibson as the low responsible bidder and to execute a contract with Gibson in accordance with the *1133bid proposal and the contract plans and specifications.
From this judgment, the DOTD appeals, contending that the trial court erred: (1) In ordering the issuance of a preliminary injunction where no prima facie showing was made of either irreparable harm to Gibson or a direct violation of the Public Bid Law;
(2) in applying Standard Specification § 102.08(g) to the lowest bidder on the project, contrary to the clear language of the specification and contrary to the discretionary authority of the DOTD to interpret its specification and administer the bid process as mandated by LSA-R.S. 48:255;
(3) in finding that Lamplighter’s bid was irregular pursuant to Standard Specification § 102.08(g);
(4) in substituting its judgment for the DOTD’s good faith determination interpreting and applying its specifications within the context of the applicable Public Bid Law;
(5) in ordering the issuance of a writ of mandamus directing the DOTD to award the contract to and execute a contract with Gibson, the second lowest bidder, in contravention of LSA-R.S. 48:255(B)(5)(b); and
(6) in failing to find the TRO issued in the proceeding below was wrongfully issued, failing to dissolve same, and failing to award damages and attorney’s fees to the DOTD pursuant to LSA-C.C.P. art. 3608 for the wrongful issuance of the TRO.
| ^Lamplighter filed an answer to the appeal, adopting the assignments of error set forth by the DOTD.6 Additionally, Louisiana Associated General Contractors, Inc. has filed an amicus curiae brief in this matter, setting forth its position as to why the trial court’s judgment should be affirmed.
Also before this court is a motion filed by Gibson to strike Lamplighter’s appellate brief. We elect to address this motion first.
MOTION TO STRIKE LAMPLIGHTER’S APPELLATE BRIEF
In support of its motion to strike Lamplighter’s appellate brief, Gibson advances two arguments: (1) that Lamplighter did not properly file an answer to the DOTD’s appeal and, alternatively, (2) that through its answer to the appeal, Lamplighter improperly seeks to challenge the judgment rendered in favor of a party that is not an appellant, ie., Gibson. With regard to its assertion that Lamplighter did not properly file an answer to the DOTD’s appeal, Gibson contends that Lamplighter filed its answer in separate proceedings involving a writ application filed by the DOTD under docket number 2010-CW-1207, not in this appeal proceeding. Thus, Gibson contends, because Lamplighter did not answer the instant appeal, its appellate brief, which opposes the trial court’s judgment, should be stricken in *1134accordance with Uniform Rules — Courts of Appeal, Rules 2-7.4 and 2-{12.13.79
However, we note that while the caption of Lamplighter’s answer incorrectly listed the docket number for the related writ application filed by the DOTD, that clerical error was corrected at the time of filing, and the answer to the appeal was, in fact, filed under the docket number of the DOTD’s appeal herein. Accordingly, we find no merit to this argument.
Gibson further asserts that an answer to an appeal does not have effect with respect to any portion of the judgment in favor of a party that has not appealed. Thus, it contends, because Lamplighter improperly requests reversal of the judgment rendered in favor of Gibson, a party herein which has not appealed the judgment in its favor, Lamplighter’s appellate brief should be stricken.
Louisiana Code of Civil Procedure article 2138 provides that “[t]he answer filed by the appellee shall be equivalent to an appeal on his part from any portion of the judgment rendered against him in favor of the appellant and of which he complains in his answer.” (Emphasis added). The jurisprudence has held that pursuant to this provision, an answer does not have the effect of an appeal as to any portion of the judgment rendered either in favor of or against a party who has not appealed. Francois v. Ybarzabal, 483 So.2d 602, 605 (La.1986).
However, LSA-C.C.P. art. 2133 further provides as follows: “Additionally, however, an appellee may by answer to the appeal, demand modification, revision, or reversal of the judgment insofar as it did not allow or consider relief prayed for by an incidental action filed in the trial court.” 110(emphasis added). Incidental actions include reconventional demands, cross-claims, interventions, and third-party demands. LSA-C.C.P. art. 1031. In the instant case, Lamplighter intervened in the proceedings below, seeking to protect its interest in the award of the construction contract at issue.8 Clearly, in rendering judgment granting a preliminary injunction and writ of mandamus, the trial court did not “allow ... the relief prayed for by [Lamplighter’s] incidental action,” ie., Lamplighter’s interest in having the court uphold the DOTD’s actions in reinstating Lamplighter as the lowest responsible bidder and awarding the contract to Lamplighter. Thus, Lamplighter’s interest in and right to seek such relief in an answer to the appeal is clearly allowed by LSA-C.C.P. art. 2133. See Notto v. Brown, 509 So.2d 788, 789 (La.App. 1st Cir.1987).
Accordingly, we deny Gibson’s motion to strike Lamplighter’s appellate brief.
DISCUSSION

Propriety of the Preliminary Injunction

(Assignments of Error Nos. 1-4)
In its petition filed below, Gibson contended that in the re-letting of this project, the bid of Lamplighter was irregular and, thus, should have been rejected by the *1135DOTD, given Lamplighter’s connections with the previously disqualified bidder TOPCOR Services. The trial court agreed and granted a preliminary injunction, prohibiting the DOTD from awarding the contract at issue to Lamplighter (or any bidder other than Gibson).
In its first four assignments of error, the DOTD challenges the trial court’s granting of a preliminary injunction and its findings underlying the Ingrant of the injunction. Specifically, in its first assignment of error, the DOTD contends that Gibson failed to make a prima facie showing of irreparable harm absent injunctive relief or of a direct violation of the Public Bid Law. Thus, the DOTD contends that the preliminary injunction was inappropriate. In its second and third assignments of error, the DOTD contends that the trial court erred in its interpretation of Specification 102.08(g) as being applicable to Lamplighter and, thus, in concluding that Lamplighter’s bid was irregular and should have been rejected by the DOTD. Additionally, in assignments of error two and four, the DOTD contends that because it interpreted and applied the specifications at issue herein in good faith, the trial court erred in failing to recognize the discretionary authority of the DOTD in interpreting its specifications and in substituting its own judgment for that of the DOTD.
Louisiana’s Public Bid Law, as set forth in LSA-R.S. 38:2211, et seq., is a prohibitory law founded on public policy.9 Hamp’s Construction, L.L.C. v. City of New Orleans, 2005-0489 (La.2/22/06), 924 So.2d 104, 107. The Public Bid Law was enacted in the interest of the taxpaying citizens, and its purpose is to protect citizens against contracts of public officials entered into because of favoritism and involving exorbitant and extortionate prices. Hamp’s Construction, L.L.C., 924 So.2d at 107. A 1 ^political entity has no authority to take any action which is inconsistent with the Public Bid Law. Broadmoor, L.L.C. v. Ernest N. Morial New Orleans Exhibition Hall Authority, 2004-0211 (La.3/18/04), 867 So.2d 651, 656. In that regard, LSA-R.S. 38:2212(A)(l)(b)(i) provides that “[t]he provisions and requirement[s] of this Section, those stated in the advertisement for bids, and those required on the bid form shall not be waived by any entity.”
Moreover, “in addition to the laws of the state relating generally to obligations and the department not in conflict with this Part,” LSA-R.S. 48:250, et seq., specifically governs the bidding and award process for public construction projects let by the DOTD. Angelo Iafrate Construction, L.L.C. v. State, Department of Transportation and Development, 2001-2761 (La.App. 1st Cir.5/10/02), 818 So.2d 973, 976, writ denied, 2002-2142 (La.11/8/02), 828 So.2d 1125.
*1136As to bidding requirements for public construction contracts and conformity therewith, LSA-R.S. 48:255(A) provides as follows:
The department shall establish specific bidding requirements, in accordance with the provisions of this Part, provisions of the Federal Highway Administration, if applicable, and other provisions as necessary and will include these requirements in the project specifications and bid package issued to prospective bidders. Bids of prospective bidders shall conform to these requirements. Bids not submitted in accordance with this Subpart or such other specified requirements are irregular and must be rejected by the department.
Accordingly, based on the plain language of LSA-R.S. 48:255, the bids of prospective bidders shall conform to the requirements of the bid proposal and project specifications. Otherwise, a bid not conforming to those requirements is irregular and “must” be rejected by the DOTD. Angelo Iafrate Construction, L.L.C, 818 So.2d at 977.
113Where the threatened action of a public body is in direct violation of a prohibitory law, the plaintiff may seek injunc-tive relief to enjoin that threatened action without a showing of irreparable injury. Louisiana Associated General Contractors, Inc. v. Calcasieu Parish School Board, 586 So.2d 1354, 1359 (La.1991); see also M.P.G. Construction, Inc. v. Department of Transportation and Development, 2003-0164 (La.App. 1st Cir.4/2/04), 878 So.2d 624, 629, writ denied, 2004-0975 (La.6/4/04), 876 So.2d 85, and Chandler v. State, Department of Transportation and Development, 2002-1410 (La.App. 1st Cir.3/28/03), 844 So.2d 905, 909. At the hearing on the preliminary injunction below, Gibson did not offer any evidence that it would suffer irreparable injury if the trial court did not grant the preliminary injunction. Thus, to prove its entitlement to a preliminary injunction, Gibson had the burden of establishing that the DOTD’s actions in reinstating Lamplighter as the low bidder was a direct violation of a prohibitory law, i.e., the Public Bid Law.
As set forth above, because the project at issue was a federal aid construction project, the DBE participation provisions, as established in 49 C.F.R., Part 26, were mandatory. Accordingly, the DBE provisions were incorporated into the construction proposal. These provisions set forth that the bidder “shall” submit the Form CS-6AAA by the due date set forth in the apparent bid results and the bid results posted on the DOTD’s website. Additionally, section G(6) of the DBE provisions in the construction proposal states as follows:
An apparent low bidder’s failure, neglect, or refusal to submit Form CS-6AAA and attachments committing to meet or exceed the DBE goal and/or documentation of good faith efforts, shall constitute just cause for forfeiture of the proposal guarantee and the DOTD rejecting the bid, pursuing award to the next lowest bidder, or re-advertising the project. |HThe apparent low bidder will not be allowed to bid on the project should readvertisement occur. (Emphasis added).
Based on this provision, TOPCOR Services was disqualified and barred from rebidding on the project when it did not timely submit to the DOTD the required Form CS-6AAA.
Moreover, with regard to the re-letting of this project, the construction proposal specifically provides that “[bjids must be prepared and submitted in accordance with Section 102 of the 2006 Louisiana Standard Specifications for Roads and, Bridges (“the Standard Specifications”) as *1137amended by the project specifications, and must include all information required by the proposal.” Standard Specification 102.08(g) provides that “[b]ids may be considered irregular and non-responsive and will be subject to rejection ... [i]f an owner or a principal officer(s) of the bidding entity is an owner or a principal officer(s) of a contracting entity which has been declared by the [DOTD] to be ineligible to bid.”
The evidence and testimony presented at the hearing on Gibson’s request for a preliminary injunction established that the sole shareholder (owner) of TOPCOR Services is TOPCOR Companies, L.L.C., which entity also owns 29% of Lamplighter.10 Moreover, the president and secretary of TOPCOR Services is James Baker, who is also the secretary/treasurer of Lamplighter.11 Clearly, TOPCOR Services and Lamplighter not only shared a common owner (TOPCOR Companies, L.L.C.), but also shared a common 11Bprincipal officer (James Baker). Thus, the legal question presented in this matter is whether TOPCOR Services’s ineligibility to rebid on the project at issue, given its disqualification in the original bid letting and the prohibition against its bidding on any re-letting, is imputed to Lamplighter and renders it ineligible pursuant to Standard Specification 102.08(g), given that the two companies share a common owner and a common principal officer.
While the DOTD acknowledged below that it had initially ruled Lamplighter’s bid to be ineligible pursuant to Standard Specification 102.08(g) based on the common ownership interests and principal officer between Lamplighter and the previously disqualified TOPCOR Services, on appeal, the DOTD now argues that Standard Specification 102.08(g) does not operate to disqualify Lamplighter, thus rendering the DOTD’s initial determination incorrect. Specifically, the DOTD contends that the proper interpretation of the term “contracting entity” in Standard Specification 102.08(g) (bids may be considered irregular and will be subject to rejection where an owner or principal officer of the bidding entity is an owner or principal officer of a “contracting entity” which has been declared ineligible to bid) renders that specification inapplicable to Lamplighter herein.
While acknowledging that the term “contracting entity” is not defined in the Standard Specifications, the DOTD asserts that the purpose of Standard Specification 102.08(g) is to prevent contractors which have been previously disqualified under Specification 108.04 from bidding on future contracts. Thus, it contends that this court should look to the definition of “contract” contained in the Standard Specifications,12 which is defined as | i/the written *1138agreement between the [DOTD] and the contractor” and should consequently conclude that a “contracting entity” as stated in Standard Specification 102.08(g) must be understood to refer only to an entity that already has had a written agreement (or contract) with the DOTD and has been disqualified from bidding pursuant to that previous contract, rather than referring to all bidding entities seeking a contract with the DOTD.13
Accordingly, urging this proposed interpretation of the Standard Specifications, the DOTD contends that TOPCOR Services was not a disqualified contractor (presumably on the basis of not having been disqualified under a prior contract with the DOTD as a result of the progress on its work under such previous contract falling behind the elapsed contract time) and, thus, was not a “contracting entity” which had been declared by the DOTD to be ineligible to bid under the provisions of Standard Specification 102.08(g). Consequently, the DOTD, in essence, contends that the fact that Lamplighter shares a common owner and principal officer with TOPCOR Services is of no consequence, given that TOPCOR Services is not a “contracting entity” within its interpretation of Standard Specification 102.08(g).
On review, we find no merit to the DOTD’s strained and convoluted interpretation of Standard Specification 102.08(g). At the outset, we note |17that the term “contracting entity” connotes present tense; yet, the DOTD seeks to have this court interpret that phrase as applying only to entities that had contracted with the DOTD in the past. Moreover, at the time TOPCOR Services was disqualified after the initial letting and deemed ineligible to bid at the re-letting of this project, it had already been awarded the contract at issue by the DOTD. Thus, as of the time of the award, TOPCOR Services was clearly considered, for all intents and purposes, to be the “contracting entity” with regard to this project. Accordingly, we cannot accept the strained analysis asserted by the DOTD and urged to support a conclusion that TOPCOR Services was not a “contracting entity” herein determined to be ineligible to bid at the re-letting.
Moreover, we find no merit to the DOTD’s attempt to limit Standard Specification 102.08(g) to entities previously “disqualified” from bidding on future projects under Standard Specification 108.04, (despite the absence of any language to this effect in Standard Specification 102.08(g) limiting its application to entities “disqualified” in such a manner).14 Rather, the language of 102.08(g) specifically applies to entities “declared ... ineligible.” (Emphasis added). Indeed, there are numer*1139ous reasons for which an entity will be disqualified, and, thus, ineligible to bid, including, inter alia: (1) application of Standard Specification 103.07 for failure to comply with the provisions of Standard Specification 103.06, regarding execution and approval of the contract; (2) application of Standard Specifications 108.04 for delay in progression of the work on a construction project with the DOTD; (3) application of section G(6) of the DBE provisions (applicable to the instant contract) for failure to timely submit | ]8required documentation; and (4) application of LSA-R.S. 48:295.1 and 48:295.2 addressing debarment. Thus, we likewise find no merit to the DOTD’s attempt to substitute the more restrictive phrase, “disqualified under Specification 108.04,” for the term “ineligible” (the term actually contained in the language of Standard Specification 102.08(g)) to support its strained interpretation of this specification.
Finally, we note that the interpretation set forth by the DOTD does not further the policy purposes behind the Public Bid Law. As stated above, the purpose of the Public Bid Law is to protect Louisiana’s taxpaying citizens against contracts of public officials entered into because of favoritism or involving extortionate prices. Hamp’s Construction, L.L.C., 924 So.2d at 107. Under the interpretation of “contracting entity” proposed by the DOTD, owners or principal officers of an entity ineligible to bid could simply create a new corporation or limited liability company owned and/or controlled by the same owners or principal officers of the ineligible entity, and that new entity would be eligible to bid when the project was rebid simply because it, being a “new” entity, had never before contracted with the DOTD and, thus, in the DOTD’s view, was not a “contracting entity.”
Accordingly, we conclude that TOPCOR Services was a “contracting entity” declared ineligible to bid at the re-letting of the project at issue. Thus, pursuant to Standard Specification 102.08(g), the bid of Lamplighter, which had a common owner and principal officer -with TOPCOR Services, was “subject to rejection.” Moreover, because the Standard Specifications were made a part of the construction proposal herein, the DOTD had no discretion or authority to waive any of the requirements therein as they applied to Lamplighter. LSA-R.S. 38:2212(A)(l)(b)(i); see also LSA-R.S. 48:255(A). For these reasons, we are constrained to conclude that the 119DOTD directly violated the Public Bid Law when it reinstated the bid of Lamplighter. Accordingly, we find no error in the portion of the trial court’s judgment enjoining the DOTD from awarding the contract at issue to Lamplighter.
However, to the extent that the trial court went beyond simply prohibiting the DOTD from awarding the contract to Lamplighter and instead ordered that the DOTD was prohibited from awarding the contract to any entity other than Gibson, the trial court erred. For the reasons more fully discussed in the following section regarding the propriety of the writ of mandamus, we conclude that the DOTD had discretion in deciding whether to award the bid to Gibson after the disqualification of Lamplighter, given that Gibson’s bid was higher than the established threshold of the preconstruction estimate for the project. See LSA-R.S. 48:255(B)(5)(b).
Thus, we amend the July 12, 2010 judgment to provide that the preliminary injunction previously granted prohibits the DOTD from awarding the contract at issue to Lamplighter.

*1140
Propriety of the Writ of Mandamus

(Assignment of Error No. 5)
In this assignment of error, the DOTD contends that the trial court erred in issuing a writ of mandamus and ordering it to award the contract at issue to Gibson, where the decision to award the contract or to reject all remaining bids, which were outside of the established range above or below the internal precon-struction estimate for the project, was a discretionary decision, rather than a ministerial act.
Pursuant to LSA-C.C.P. art. 3862, a writ of mandamus may be issued in all cases where the law provides no relief by ordinary means or where the delay involved in obtaining ordinary relief may cause injustice. |2nNonetheless, a writ of mandamus may only issue to compel the performance of a ministerial duty required by law. Copsey v. Joint Legislative Budget Control Council, 607 So.2d 841, 843 (La.App. 1st Cir.1992). A ministerial duty is one in which nothing is left to discretion. If a public official is vested with any element of discretion, mandamus will not lie. Hoag v. State, 2004-0857 (La.12/1/04), 889 So.2d 1019, 1023-1024.
The evidence presented at the hearing below establishes that while an “estimated cost range” is published to prospective bidders in the construction proposal, that estimated range is for “information purposes” only. The DOTD also prepares a precon-struction estimate, which is a figure not published prior to the letting of a project and which is a figure used internally by the DOTD to determine whether a bid should be rejected. Specifically, in deciding whether to reject a bid, the DOTD has established a range of plus 10% to minus 25% of the internal preconstruction estimate, as the threshold amounts constituting just cause to reject the bid. Thus, when a bid is above the established threshold of the preconstruction estimate, it is subject to being rejected by the DOTD chief engineer. LSA-R.S. 48:255(B)(5)(b). According, to the testimony of the chief engineer, even though a bid is above the established range of the preconstruction estimate, he may nonetheless accept the bid if there are revenues available to fund the project. Further, the DOTD chief engineer has sole responsibility in deciding whether to accept or reject a bid that is outside the established range of the pre-construction estimate.15
|MIn the instant case, all bids except Lamplighter’s were above the established threshold of the preconstruction estimate for the project. Thus, we are constrained to agree with the DOTD that its chief engineer had the authority to reject all bids.16 See LSA-R.S. 48:255(B)(5)(b).
*1141Accordingly, we cannot conclude that the awarding of the contract at issue to Gibson was simply a ministerial duty. Thus, the issuance of a writ of mandamus was not legally warranted, and it must be reversed.

Damages and Attorney’s Fees for Allegedly Wrongfully Issued TRO

(Assignment of Error No. 6)
In its final assignment of error, the DOTD contends that the trial court erred in failing to grant its motion to dissolve the TRO, that the preliminary injunction should be dissolved, and that it is entitled to damages pursuant to LSA-C.C.P. art. 3608 for wrongful issuance of the TRO and the preliminary injunction.17 The trial court’s judgment was silent as to the DOTD’s request for damages and attorney’s fees, and this silence is deemed to be a rejection of its demand. Robertson v. Sun Life Financial, 2009-2275 (La.App. 1st Cir.6/11/10), 40 So.3d 507, 510.
Pursuant to LSA-C.C.P. art. 3608, a trial court may award damages for the wrongful issuance of a TRO or preliminary injunction. Thus, the trial court’s decision to award damages or not to award damages for a wrongfully | ^.issued TRO or preliminary injunction is discretionary, M.P.G. Construction, Inc. 878 So.2d at 629, and that decision will not be reversed on appeal absent an abuse of the trial court’s discretion. LHO New Orleans LM, L.P. v. MHI Leasco New Orleans, Inc., 2006-0489 (La.App. 4th Cir.4/16/08), 983 So.2d 217, 228-229.
Having found no error in the trial court’s determination that a preliminary injunction was warranted, we find no abuse of the trial court’s discretion in refusing to award damages or attorney’s fees for the alleged wrongful issuance of the TRO or the preliminary injunction. This assignment of error lacks merit.
CONCLUSION
For the above and foregoing reasons, the portion of the July 12, 2010 judgment granting a preliminary injunction is amended to provide that a preliminary injunction is issued, prohibiting the DOTD from awarding State Project Nos. 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 and 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 to Lamplighter Construction, L.L.C. As amended, the portion of the judgment granting a preliminary injunction is affirmed. However, the portion of the judgment issuing a writ of mandamus ordering the DOTD to award the subject contract to Gibson & Associates, Inc. is hereby reversed and the matter is remanded for further proceedings. In all other respects, the judgment is affirmed. Costs of this appeal in the amount of $2,909.96 are assessed against the DOTD.
The motion to strike Lamplighter’s brief is hereby denied.
AMENDED IN PART AND AFFIRMED, AS AMENDED; REVERSED IN PART AND REMANDED; MOTION TO STRIKE LAMPLIGHTER’S BRIEF DENIED.
McDONALD, J., agrees and assigns additional reasons.

. We note that the judgment on appeal herein incorrectly lists the State Project Number as 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 instead of 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

. A disadvantaged business enterprise, or DBE, is defined in the Code of Federal Regulations as a for-profit small business concern that is at least 51% owned by one or more individuals who are both socially and economically disadvantaged (or, in the case of a corporation, in which 51% of the stock is owned by one or more such individuals) and whose management and daily business operations are controlled by one or more of the socially and economically disadvantaged individuals who own it. 49 C.F.R. § 26.5. "Socially and economically disadvantaged individual[s]” include, but are not limited to, Black Americans, Hispanic Americans, Native Americans, Asian-Pacific Americans, Subcontinent Asian Americans, and women. 49 C.F.R. § 26.5. Some of the stated objectives of the DBE provisions include: (1) ensuring nondiscrimination in the award and administration of U.S. Department of Transportation ("DOT”)-assisted contracts in the DOT’S highway, transit, and airport financial assistance programs; (2) creating a level playing field on which DBEs can compete fairly for DOT-assisted contracts; and (3) removing barriers to the participation of DBEs in DOT-assisted contracts. 49 C.F.R. § 26.1(a), (b) & (e).

. Pursuant to Standard Specification § 102.08(g), a bid may be considered "irregular” if an owner or principal officer of the bidding entity is an owner or principal officer of a contracting entity which has been declared to be ineligible to bid by the DOTD.

. No protest hearing was held, and, contrary to the protest procedure set forth in the DBE provisions made a part of the Construction Proposal herein, Gibson & Associates was not notified that Lamplighter had filed a protest.

. In an application for supervisory writs filed with this court, the DOTD challenged in part the trial court’s denial of its exception of nonjoinder of a party. This court granted the DOTD’s writ application in that respect, ordering that "[t]he July 12, 2010 judgment, insofar as it overrules the [DOTD’s] peremptory exception of nonjoinder of a party, which seeks to add Lamplighter Construction, LLC as a party to the suit, is reversed and the peremptory exception of nonjoinder of a party is sustained adding Lamplighter Construction, LLC as a party to the suit.” Gibson & Associates. Inc. v. State of Louisiana, Department of Transportation and Development, 2010 CW 1207 (La.App. 1st Cir.9/27/10).

. Incorporated in its answer is a request by Lamplighter that it be designated as an appellant because it is aligned with the DOTD in this appeal. However, there are different and distinct time delays and other requirements for the filing of an appeal and an answer to an appeal. LSA — C.C.P. arts. 2087 & 2133(A); Local Rules-Court of Appeal, First Circuit, Rules 1-1 & 1-5. Moreover, an answer to an appeal is not equivalent to, and is more limited in scope than, an appeal. See LSA-C.C.P. arts. 2082 & 2133. Accordingly, because Lamplighter chose to answer the DOTD’s appeal, rather than file its own appeal, it is not an appellant herein. See Foster v. Unopened Succession of Smith, 38,386 (La. App. 2nd Cir.5/20/04), 874 So.2d 400, 404, writ denied, 2004-1547 (La. 11/8/04), 885 So.2d 1137.

. Uniform Rules — Courts of Appeal, Rule 2-7.4 provides that the court may summarily dismiss motions and pleadings that are untimely or improperly filed. Rule 2-12.13 states that "[b]riefs not in compliance with these Rules may be stricken in whole or in part by the court, and the delinquent party or counsel of record may be ordered to file a new or amended brief.”

. Moreover, as stated above in footnote 4, by order dated September 27, 2010, this court maintained the DOTD’s peremptory exception of nonjoinder of a party and ordered Lamplighter added as a party to the suit.

. The Public Bid Law applies to public entities of the state of Louisiana. LSA-R.S. 38:2212. "Public entity” is defined in the Public Bid Law to include "any agency, board, commission, department, or public corporation of the state.” LSA-R.S. 38:2211(A)(11). Thus, while LSA-R.S. 48:250, et seq., specifically governs the bidding and award process for public construction projects let by the DOTD, the provisions of the Public Bid Law, LSA-R.S. 38:2211 et seq, also apply to the DOTD to the extent that they do not conflict with LSA-R.S. 48:250, et seq. See LSA-R.S. 48:250; see also M.P.G. Construction, Inc. v. Department of Transportation and Development, 2003-0164 (La.App. 1st Cir.4/2/04), 878 So.2d 624, writ denied, 2004-0975 (La.6/4/04), 876 So.2d 85, and Diamond B Construction Company, Inc. v. Louisiana Department of Transportation and Development, 2000-1583 (La.App. 1st Cir. 12/22/00), 780 So.2d 439, writ denied, 2001-0246 (La.4/20/01), 790 So.2d 633 (applying provisions of the Public Bid Law to contracts let by the DOTD).

. TOPCOR Companies, L.L.C., is, in turn, owned by James Baker, its sole member.

. Additionally, we note that the qualifying party through the Louisiana Contractor's Licensing Board for both companies is James Baker. Indeed, with Baker as its qualifying party, Lamplighter first obtained its commercial contractor's license in Louisiana on March 25, 2010, after its affiliated entity TOP-COR Services had been disqualified from bidding on the project at issue. Moreover, based on their registration with the Secretary of State, both companies have the same address listed on Industriplex Boulevard in Baton Rouge, and James Baker is also the registered agent for both companies.

.Interestingly, in the trial court below, the DOTD argued that the term "contracting entity” in Standard Specification Í 02.08(g) really meant "contractor,” as defined in the Standard Specifications, which it interpreted to mean an entity that had been previously awarded a contract with the DOTD. Thus, it further argued that a bidder would not yet be a "contractor,” and that Standard Specification 102.08(g) only applied where there was a contractor that had been disqualified from *1138bidding on any job due to its performance under such previous contract.
However, in its appellate brief, the DOTD acknowledges that the term "contractor” is defined at one point within the Title 48 provisions applying to the DOTD, specifically in LSA-R.S. 48:295.1 addressing "debarment,” to include "bidders or contractors on projects let pursuant to R.S. 48:251 et seq.” (Emphasis added). Thus, the DOTD concedes that the term "contracting entity" in Standard Specification 102.08(g) would apply to "debarred” entities, even though those entities had never previously contracted with the DOTD.

. Standard Specification 108.04 addresses the prosecution of the work within the contract time and provides for a work-progress disqualification, i.e., disqualification of a contractor whose progress on the work falls behind the elapsed contract time.

. While advancing this argument, the DOTD then concedes, as noted in footnote 11 supra, that Standard Specification 102.08(g) would also have to apply to debarred entities, even if such entities had never previously been awarded a contract by the DOTD.

. We deem it noteworthy that the estimated cost range for the project at issue that was published to prospective bidders was $1,000,000.00 to $2,500,000.00, but the internal preconstruction estimate was $976,986.45, a figure below the published estimated cost range. Thus, while Gibson's bid was within the published estimated cost range, it was over the threshold of the precon-struction estimate, and, thus, subject to rejection pursuant to LSA-R.S. 48:255(B)(5)(b). However, when questioned about the fact that the DOTD’s preconstruction estimate was outside of the published estimated cost range, (i.e., less than the amount expressed to prospective bidders), the DOTD chief engineer could provide little guidance regarding the process, testifying that he was "a little confused” about that and that it was something he wanted to "look into” in the future.

. We note that the DOTD chief engineer testified that he did not know of any just cause not to award the contract to Gibson in the event that Lamplighter's bid was determined to be irregular and had to be disqualified. Nonetheless, the evidence of record established that the decision whether to reject all other bids or to accept Gibson’s bid was a *1141decision that he alone was authorized to make.

. While an order relating to a TRO is not appealable pursuant to LSA-C.C.P. art. 3612, the denial of a request for damages and attorney’s fees for wrongful issuance of a TRO, if contained in an otherwise appealable judgment, may be reviewed by the appellate court. See Davis v. Raymond Petroleum, Inc., 396 So.2d 600, 601-602 (La.App. 3rd Cir.1981).